William LYNCH, on behalf of himself
and others similarly situated,
Plaintiff,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, Defendant.

No. 07–CV–562 (CM).

United States District Court,
S.D. New York.

April 26, 2007.

Jack A. Raisner, Outten & Golden, LLP (NYC), New York, NY, Donald H. Nichols, Paul J. Lukas, Rachhana T. Srey, Nichols Kaster & Anderson, PLLP, Minneapolis, MN, for plaintiff.

Andrew James Voss, Littler Mendelson, P.A., Minneapolis, MN, Lisa A. Schreter, Littler Mendelson, P.C., Atlanta, GA, William Patrick McLane, Littler, Mendelsohn, P.C., (NJ), Newark, NJ, for defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR, ALTERNATIVELY, FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927, AND GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT–AUTHORIZED NOTICE

MCMAHON, District Judge.

Plaintiff William Lynch brings this lawsuit on behalf of himself and other similarly situated employees of defendant United Services Automobile Association ("USAA"), for USAA's alleged violations of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201 *et seq.* Lynch alleges that USAA failed to pay plaintiff and other special investigators for overtime hours worked in excess of forty hours per week at a rate of one and one half times their regular rate of pay, in violation of 29 U.S.C. § 207(a)(1).

USAA moves to dismiss the complaint on the basis that Lynch is judicially and equitably estopped from bringing such a claim. USAA argues that Lynch sought to opt into an identical class action filed in August 2006 in the Middle District of Flor-

ida (which was subsequently dismissed in December 2006), and that Lynch argued in that litigation that the Florida court was the proper venue to determine whether to conditionally certify the class of USAA special investigators. Because Lynch now avers that this court is the proper forum to decide whether to certify the identical class, USAA argues that he should be estopped and the case dismissed. Alternatively, USAA argues for sanctions against Lynch's attorneys because their "blatant forum-shopping" means USAA will have to duplicate its efforts in defending the Florida litigation here.

Plaintiff Lynch concurrently moves for conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing USAA to produce a list of its special investigators. Lynch argues that the allegations in his complaint, the deposition testimony of four opt-in plaintiffs and USAA's 30(b)(6) representative, and three opt-in plaintiff declarations sufficiently demonstrate that a class of "similarly situated" employees exists, and that no further discovery is necessary at this procedural stage.

For the reasons stated below, defendant's motion to dismiss the complaint or, alternatively, for sanctions under 28 U.S.C. § 1927, is denied. Plaintiff's motion for conditional class certification, court-authorized notice, and an order directing USAA to produce a list of special investigators, is granted.

## I. Background

### A. The Parties

Defendant USAA is a financial services company headquartered in San Antonio, Texas, that provides insurance products and services, including property and casualty insurance, to military personnel and their family members. USAA operates a unit within its Property & Casualty company called the Special Investigators Unit ("SIU"). (Declaration of Rachhana T. Srey in Supp. of Pl.'s Opp. to Def.'s Mot. to Dismiss ("Srey Mot. to Dismiss Decl."), Ex. B, Kevin Casey Dep. Tr. at 11–12.)

Plaintiff William Lynch was employed by USAA as an SIU special investigator. At all relevant times, Lynch lived and worked for USAA in the State of New York. (*Id.*, Ex. C, William Lynch Dep. Tr. at 64.)

### B. The Purported Class

Lynch brings this collective action complaint on behalf of himself and all "similarly situated" USAA employees, namely USAA's special investigators.

The primary job of USAA special investigator is to investigate questionable, suspect, or fraudulent claims in one of four areas: property, auto, theft and fire. (Declaration of Rachhana T. Srey in Supp. of Pl.'s Mot. for Conditional Class Certification ("Srey Certification Decl."), Ex. C, Casey Dep. Tr. at 32, 49.) Indeed, special investigators are the only USAA employees responsible for investigating potential fraudulent claims. (*Id.* at 19.) Of the 72 current special investigators, 24 are assigned to investigate specific types of claims and 48 investigate all claims. (*Id.* at 49.)

USAA maintains one job description for all of its special investigators. (*Id.* at 42.) All new special investigators are required to attend a week-long training class held at USAA's headquarters in San Antonio, where they receive a common set of training and orientation materials. (*Id.* at 42–46.) All investigators must perform their job duties in accordance with the *USAA SIU Standard Operating Guidelines,* a handbook drafted by USAA regional managers. (*Id.* at 33, 34; Ex. K.)

All special investigators typically receive assignments in one of two ways. (*Id.*, Ex. C, Casey Tr. at 46.) One process—the "back room" method—begins when an adjuster observes something unusual about a claim, and refers the claim to SIU. These referrals are processed at USAA's headquarters in San Antonio, where the claim is referred to a special investigator based on experience, location, work load, and eligibility. (*Id.* at 46–47, 53.) Under the second process—the "split diary" method—adjusters refer claims directly to special investigators' managers. (*See, e.g., id.*, Ex. E, Judith Burcham Dep. Tr. at 144–45.) Regardless of method, special investigators do not have control over which claims are assigned to them, (*see, e.g., id.*, Ex. D, Lynch Dep. Tr. at 77), nor do they decide whether to investigate a referral. (*See, e.g., id.*, Ex. F, Andrew McFeeley Dep. Tr. at 258–59.)

Similarly, investigators do not have the authority to decide whether to use a private investigator or other outside vendor without their manager's approval. (*See, e.g., id.*, Ex. G, Larry Pangle Dep. Tr. at 102–08.) All outside vendors must be chosen from a pre-approved list. (*See, e.g., id.* at 85.)

Once a claim has been referred for investigation, all special investigators typically use the same research tools such as the Insurance Services Office ("ISO") database, which confirms similar losses filed by the claimant in the past, and the National Crime Bureau Investigation ("NICB") database. (*Id.*, Ex. C, Casey Dep. Tr. at 55–56.) Many special investigators also contact local federal law enforcement officials and work with NICE agents on their investigations. (*Id.*, Ex. I, Robert Cliff Decl at ¶ 7, Robert DeGroot, Sr. Decl. at ¶ 6, Stig Larson Decl. at ¶ 6.)

In addition to reviewing these databases, special investigators conduct inter-

views, obtain statements, review damaged property, and take photographs. (*Id.*, Ex. D, Lynch Dep. Tr. at 73; Ex. E, Burcham Dep. Tr. at 182–83; Ex. F, McFeeley Dep. Tr. at 123.) After they have conducted their investigations, special investigators participate in meetings where they report the facts of the investigation to those who decide whether to pay or deny a claim. (*Id.*, Ex. D, Lynch Dep. Tr. at 133; Ex. E, Burcham Dep. Tr. at 186–90; Ex. F, McFeeley Dep. Tr. at 126.) During these meetings, the special investigators do not decide whether further investigation is necessary or whether to conduct an Examination Under Oath of the insured. (*Id.*, Ex. D, Lynch Dep. Tr. at 133; Ex. E, Burcham Dep. Tr. at 183–84; Ex. F, McFeeley Dep. Tr. at 268.) Nor do special investigators provide recommendations or give their opinions regarding whether a fraud has occurred; they simply report the facts learned during their investigation. (*Id.*, Ex. D, Lynch Dep. Tr. at 136–37; Ex. E, Burcham Dep. Tr. at 195–97; Ex. F, McFeeley Dep. Tr. at 126, 271–73.)

During the last several years, special investigators have witnessed a dramatic increase in the number of hours they have worked. (*Id.*, Ex. G, Pangle Dep. Tr. at 53; Ex. H, Ulick Dep. Tr. at 260; Ex. I, DeGroot Decl. at ¶ 8.) Regardless of what type of claim being investigated, all special investigators are expected to investigate 288 claims per year. (*Id.*, Ex. C, Casey Dep. Tr. at 51.) Special investigators routinely work over forty hours per week in order to investigate all of their files. (*Id.*, Ex. D, Lynch Dep. Tr. at 158; Ex. E, Burcham Dep. Tr. at 287; Ex. F, McFeeley Dep. Tr. at 288–90, 339; Ex. G, Pangle Dep. Tr. at 62; Ex. I, Cliff Decl. at ¶ 9, DeGroot Decl. at ¶ 8, Larson Decl. at ¶ 10.) USAA does not keep a record of the actual number of hours worked by any special

investigator. (*Id.*, Ex. C, Casey Dep. Tr. at 59.)

USAA evaluates the job performance of all special investigators using the same standards. (*Id.* at 36.) All special investigators receive an annual salary, consideration for merit increases, and consideration for both a holiday bonus and a performance bonus. (*Id.* at 62–63.) No special investigator is paid overtime compensation because they are all classified as "exempt." (*Id.* at 65–66.)

## C. The Florida Litigation

On August 4, 2006, the law firm Nichols, Kaster and Anderson, PLLP ("NKA") filed a complaint in the Middle District of Florida, on behalf of Zell Armstrong and other "similarly situated" employees against USAA. (*Armstrong v. USAA*, No. 06–CV–1439 (M.D.Fla. Aug. 4, 2006), Docket Entry ("D.E.") 1, Compl.) In this complaint, named plaintiff Armstrong, a Florida resident and special investigator in USAA's regional branch office in Tampa, FL, alleged that USAA failed to pay overtime compensation to its special investigators in violation of the FLSA, 29 U.S.C. § 207(a)(1). (*Id.* ¶¶ 7–9.) Armstrong further alleged that USAA failed to "preserve records with respect to each of its employees sufficient to determine their wages, hours … in violation of the FLSA." (*Id.* ¶ 10.)

Shortly after Armstrong filed his complaint, several other former USAA special investigators filed "USAA Plaintiff Consent Forms" ("Consent Forms"), seeking to join the litigation as opt-in plaintiffs. Andrew McFeeley, another special investigator based in Florida, filed his Consent Form on August 8, 2006. (*Armstrong*, D.E. 4.) Lynch, the named plaintiff in the instant action and a resident and former USAA employee based in New York, filed

his Consent Form on September 25, 2006. (*Armstrong*, D.E. 13.)

On October 17, 2006, the *Armstrong* parties met and conferred pursuant to the Middle District of Florida's local rules. (*Armstrong*, D.E. 22, Case Mgmt. Report.) The substance of that meeting was memorialized in a joint Case Management Report, filed on October 23, 2006. (*Id.*) According to the report, the parties disagreed over whether USAA was entitled to conduct discovery regarding Armstrong's allegation that he was similarly situated to a nationwide class of special investigators. (*Id.*) Believing it had such a right, USAA served discovery requests on Armstrong on October 17, 2006, including interrogatories, production requests and deposition notices for the nine individuals, including Lynch, who had at that point filed Consent Forms in *Armstrong*. (*Id.*) The following day, October 18, 2006, Armstrong responded by serving his own interrogatories, production requests, requests for admission, and Fed.R.Civ.P. 30(b)(6) deposition notice. (*Id.*)

Shortly thereafter, on October 27, 2006, Armstrong filed his motion for conditional class certification and judicial notice. (*Armstrong*, D.E. 24.) In his motion, Armstrong argued that conditional certification was appropriate because nine other former USAA special investigators had filed Consent Forms, thereby demonstrating that other USAA employees were "similarly situated" to Armstrong. Armstrong further contended that these Consent Forms rendered discovery on the issue of conditional certification unnecessary.

In response to Armstrong's motion, on October 31, 2006, USAA filed a motion for an extension of time to respond to the certification motion, so that it could conduct discovery regarding Armstrong's contention that he was similarly situated to a

nationwide class of USAA employees. (*Armstrong*, D.E. 25.) Following oral argument on November 1, 2006, the court granted USAA's motion, extending its deadline to respond to Armstrong's certification motion until December 4, 2006, and permitting both parties to take limited discovery. (*Armstrong*, D.E. 29, Order.) Accordingly, the parties proceeded to respond to the already served discovery requests, and coordinate a deposition schedule.[1]

On November 7, 2006, NKA requested that Armstrong's deposition be rescheduled to the last week of November and that the location be moved from Orlando to Tampa. (Declaration of Andrew Voss in Supp. of Mot. to Dismiss ("Voss Decl.") ¶ 12.) In response, USAA served an amended notice of Armstrong's deposition for November 27, 2006 in Orlando. (Voss Decl., Ex. 9.)

By November 20, USAA had received discovery responses from several of the opt-in plaintiffs; however, USAA had not received responses from other opt-in plaintiffs, nor had it received responses from Armstrong. On November 21, USAA contacted NKA to inquire why it had not served discovery responses on Armstrong's behalf. One day later NKA responded to USAA: "As you likely already know, Mr. Armstrong has decided to withdraw from participation in the lawsuit, leaving us with no named Plaintiff. Therefore, we intend to move the Court to substitute parties."[2] (Voss Decl., Ex. 10.)

However, NKA never filed such a motion and Armstrong failed to attend his scheduled November 27 deposition. Accordingly, on December 7, 2006, USAA filed—concurrently with its opposition to Armstrong's certification motion—a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 37(d) and 41(b). (*Armstrong*, D.E. 38, 40.) In this motion, USAA requested the "dismissal of all Opt-in Plaintiffs without prejudice." (*Armstrong*, D.E. 38 at 1.) Furthermore, USAA did not seek costs or disbursements from Armstrong or NKA as part of its motion. (*Id.*)

On December 22, Armstrong filed his response to USAA's motion to dismiss, which reads in its entirety:

> Named Plaintiff Zell Armstrong does not oppose Defendant's motion to dismiss under Fed.R.Civ.P. 41(b) and 37(d). Mr. Armstrong's claim should be dismissed with prejudice and the claims of all other individuals who consented to join this case as "opt-in" Plaintiffs should be dismissed without prejudice so that these individuals may have an opportunity to re-file the claims in the proper venue.

(*Armstrong*, D.E. 42.)

On January 10, 2007, the court granted USAA's motion and dismissed Armstrong's complaint with prejudice. (*Armstrong*, D.E. 44, Dismissal Order.) However, in its brief order the court noted that, "While numerous consent forms were file [sic] by potential opt-in plaintiffs, the Court did not grant permission for these potential opt-in plaintiffs to join this case, thus this

---

1. Both parties later agreed to extend USAA's deadline until December 7, 2006 to accommodate the parties' deposition schedule. (*Armstrong*, D.E. 35.)

2. According to Lynch's opposition papers, NKA attempted to substitute Andrew McFeeley—the only other opt-in plaintiff who was also a Florida resident—as the named plaintiff in *Armstrong*. But, "For reasons NKA will share only with the Court, *in camera*, those efforts were unsuccessful." (Pl.'s Opp. Br. at 5.) NKA's inability to substitute McFeeley for Armstrong is irrelevant to the motions pending before this court, and an *in camera* explanation is therefore unnecessary.

order has no effect on such opt-in plaintiffs' claims and they are free to file a separate action in the proper venue." (*Id.*)

### D. The Current Litigation

On January 24, 2007, Lynch filed the instant complaint in this court on behalf of himself and other "similarly situated" employees. (Compl., caption.) In his complaint, Lynch—a New York state resident who worked as a USAA special investigator in New York—makes precisely the same allegations as the named plaintiff in *Armstrong* regarding USAA's failure both to pay overtime compensation and maintain adequate employee time records. (*Id.* ¶¶ 10–13.) In addition, several of the opt-in plaintiffs from the Florida action joined Lynch as opt-in plaintiffs in his New York action, by signing identical consent forms and attaching those forms to Lynch's complaint. (*Id.*, attachments.) Zell Armstrong was not among these opt-in plaintiffs.

USAA filed its answer on March 7, 2007 and its motion to dismiss on March 14, 2007. In its motion, USAA alleges that Lynch is both judicially and equitably estopped from filing this lawsuit because he, "through his counsel ... represented to a federal court in Florida that it was the proper venue to hear and decide whether to conditionally certify a class of alleged aggrieved USAA special investigators—*the same alleged aggrieved group, alleging the same injuries*—as in this case." (Def.'s Mot. to Dismiss at 10) (emphasis in original.) Alternatively, USAA seeks sanctions pursuant to 28 U.S.C. § 1927 in the amount of $227,853.46, the total costs and fees incurred by USAA in defending *Armstrong*.

Two weeks after USAA filed its motion to dismiss, Lynch filed his motion seeking

conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing USAA to produce a list of special investigators.[3]

## II. USAA's Motion to Dismiss

### A. Standard of Review

Although USAA filed a motion to dismiss, both USAA and Lynch submitted extrinsic evidence regarding the issues of judicial and equitable estoppel. Because this court could take judicial notice of some, but not all, of this extrinsic evidence, *see Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir.2000) (holding courts may take judicial notice of pleadings, testimony, and decisions from prior lawsuits)—and because additional discovery would not shed any additional light on the issues raised in USAA's motion—this court will convert USAA's motion to dismiss into a motion for summary judgment. *See Daddazio v. Katherine Gibbs School, Inc.*, No. 98–CV–6861, 1999 WL 228344, at *1 (S.D.N.Y. Apr.20, 1999).

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the court to determine. *Balderman v. United*

---

**3.** USAA's subsequent motion to stay its response to Lynch's certification motion pend-

ing the outcome of USAA's motion to dismiss, was summarily denied on April 11, 2007.

*States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989).

### B. Lynch is Neither Judicially Nor Equitably Estopped from Filing this Complaint Because He Was Not a Party to the Armstrong Litigation

#### 1. *Judicial Estoppel*

USAA's primary contention is that Lynch should be judicially estopped from filing a collective action complaint in this court because Lynch previously "represented to a ... Florida [court] that it was the proper venue to ... decide whether to conditionally certify a class of alleged aggrieved USAA special investigators," and Lynch is now representing to this court that it is the proper venue to decide whether to certify what is essentially the identical class with identical injuries. (Def.'s Mot. to Dismiss at 10.)

The Supreme Court recently discussed the doctrine of judicial estoppel in *Zedner v. U.S.*, —— U.S. ——, 126 S.Ct. 1976, 1987, 164 L.Ed.2d 749 (2006). There, the Court explained, "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule ... generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Zedner*, 126 S.Ct. at 1987 (internal quotation marks and citations omitted).

The *Zedner* Court further reiterated that although this doctrine could not be reduced to a precise formula or test, "several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citations and internal quotation marks omitted); *cf. Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir.2005) ("Our circuit has consistently limited the application of judicial estoppel to 'situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced.' ") (quoting *Stichting v. Schreiber*, 407 F.3d 34, 45 (2d Cir.2005)).

■ It is unnecessary to consider any of these factors, for the simple reason that Lynch was not a party to the *Armstrong* litigation. Despite USAA's protestations that Lynch signed a Consent Form "seeking to join" *Armstrong*, (Def.'s Mot. to Dismiss at 10), the *Armstrong* court explicitly "did not grant [Lynch] permission to join this case." (*Armstrong*, D.E. 44, Dismissal Order at 1.) Therefore, USAA's claim that Lynch is judicially estopped from offering a position in the current litigation that seems inconsistent with his previous effort to litigate in Florida is simply wrong. Indeed, when Lynch and the other opt-in plaintiffs were not permitted to join the Florida litigation, the *Armstrong* court gave Lynch its judicial blessing "to file a separate action in the proper venue." (*Id.*)

#### 2. *Equitable Estoppel*

Alternatively, USAA urges this court to dismiss Lynch's collective action complaint on the basis of equitable estoppel.

■ Equitable estoppel is "A bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true." Black's Law Dictionary (8th ed.2004). The doctrine is thus "grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2d Cir.1996); *see also Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir.1996). The doctrine is "imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." *Ionosphere Clubs,* 85 F.3d at 999; *see also Readco,* 81 F.3d at 301.

■ Lynch is no more equitably estopped from maintaining his complaint in this court, than he is judicially estopped. In its moving papers, USAA argues that Lynch has employed a "disingenuous litigation strategy" by "previously pursuing the same lawsuit, involving the same parties, alleging the same legal claims, and then short-circuiting the process so [Lynch, other opt-in plaintiffs and NKA] could file in a forum that they perceived as more favorable after 'testing the waters' in the Middle District of Florida." (Def's Mot. to Dismiss at 14.) But Lynch did not file the *Armstrong* litigation. He sought to join it, yes, but the court prevented him from doing so—leaving him free to file a claim on his own behalf elsewhere. USAA does not cite a single authority that supports estopping a plaintiff from seeking relief because he tried unsuccessfully to opt into a similar action in another juris-

diction on behalf of a different plaintiff, that was dismissed in short order.

Because he was never a party until now, Lynch could not have "contradict[ed] what [he] has said or done before." Black's Law Dictionary (8th ed.2004). Nor would "injustice ... otherwise result," *Ionosphere Clubs,* 85 F.3d at 999, given that USAA sought "dismissal of all Opt-in Plaintiffs without prejudice," (*Armstrong,* D.E. 38, USAA's Mot. to Dismiss at 1), and the *Armstrong* court specifically stated that Lynch and the other opt-in plaintiffs were "free to file a separate action in the proper venue." (*Id.,* D.E. 44, Dismissal Order at 1.)

The party USAA really wants to "estop" is NKA, the law firm that brought both lawsuits. USAA offers no basis for doing so. Instead, it seeks sanctions against NKA! That motion is no more meritorious than its estoppel motion against Lynch.

## C. § 1927 Sanctions are Not Warranted

Alternatively, defendant USAA seeks sanctions against NKA pursuant to 28 U.S.C. § 1927, for $227,853.46 in costs and fees incurred in defending the Florida action. USAA argues that NKA's "blatant forum-shopping" means that USAA "will be required to duplicate the substantial effort undertaken to confront this same claim in the *Armstrong* litigation," and that sanctions are therefore proper. (Def's Mot. to Dismiss at 2, 18.)

■ § 1927 provides that, "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct." An award under this statute is proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper pur-

pose such as delay." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* No. 99–CV–10175, 2001 WL 1154669, at *3 (S.D.N.Y. Oct. 1, 2001); *see also Bowler v. INS,* 901 F.Supp. 597, 604–05 (S.D.N.Y.1995) ("the purpose of § 1927 is to deter unnecessary delays in litigation"). The Second Circuit further requires "that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986); *see also Patsy's Brand,* 2001 WL 1154669, at *3 ("Bad faith is the touchstone of an award under this statute."); *Colucci v. New York Times Co.,* 533 F.Supp. 1011, 1013–14 (S.D.N.Y.1982) ("To justify the imposition of excess costs of litigation upon an attorney his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation.") "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." *Bowler,* 901 F.Supp. at 605.

■ While USAA's moving papers accuse NKA of "playing fast and loose with court proceedings," and implementing a "disingenuous litigation strategy," (Def's Mot. to Dismiss at 8, 14), the evidentiary record does not support such allegations. The record merely shows that NKA filed a lawsuit on behalf of Armstrong and other similarly situated USAA employees. When Armstrong chose to withdraw from the suit, NKA attempted to substitute another named plaintiff in the Florida case. When that effort proved unsuccessful, NKA and Armstrong consented to dismissal of the complaint, and NKA commenced a new action on behalf of Lynch, who had the Florida court's explicit blessing to bring suit in what was (for Lynch) a proper forum.

USAA offers no unseemly explanation for why NKA aborted the Florida litigation. USAA does not argue, for example, that the Second Circuit is more hospitable to FLSA claims than the Eleventh Circuit. Nor do the two chain emails submitted by the parties—the sole pieces of evidence that exist outside the *Armstrong* record—reflect anything more than apparently good faith efforts by counsel to coordinate a deposition schedule. (*See* Voss Decl., Ex. 9; Srey Mot. to Dismiss Decl., Ex. L.) Thus, on the record before this court, the only reasonable explanation offered by either party for NKA's consenting to dismissal in *Armstrong* is the withdrawal of the Florida resident/named plaintiff and NKA's inability to locate a replacement. That is a good faith reason to consent to dismissal in a particular forum.

That USAA was forced to file or respond to various collateral motions during the lifespan of Armstrong's complaint hardly amounts to bad faith conduct by NKA. USAA argues that it expended unnecessary resources both in responding to Armstrong's certification motion and in moving to dismiss the complaint, given that NKA eventually consented to dismissal. But only two weeks passed between Armstrong's withdrawal (November 21) and USAA's deadline for opposing certification and decision to file a motion to dismiss (both on December 7). The record reflects that NKA believed it could and would substitute named plaintiffs. (*See* Srey Mot. to Dismiss Decl., Ex. L.) Such a belief was particularly well-founded, since another Florida resident had already signed a Consent Form. (*Armstrong,* D.E. 4.) Nothing in the record suggests that NKA actually knew during this two week period that it would be unable to substitute another named plaintiff, or that NKA intended to run up USAA's legal fees or otherwise delay the litigation. Moreover, NKA did not oppose USAA's motion to dismiss once it realized its efforts were

futile; rather, NKA consented to dismissal two weeks after USAA filed its motion. Given this record, NKA's inability to substitute a named plaintiff inside a two week window hardly demonstrates that NKA acted in bad faith. *Cf. Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1019 (2d Cir.1988) (upholding sanctions on counsel for forcing plaintiffs to make successive motions to compel discovery); *Steinberg v. St. Regis/Sheraton Hotel*, 583 F.Supp. 421, 426 (S.D.N.Y.1984) (awarding § 1927 sanctions in "one of the most frivolous employment discrimination actions ever brought"); *Aller v. New York Bd. of Elections*, 586 F.Supp. 603, 608 (S.D.N.Y.1984) (awarding sanctions where counsel advised plaintiffs to pursue constitutional claims that were legally precluded from being litigated in that forum).

Furthermore, any merits-based work that USAA's attorneys have done in connection with the *Armstrong* action can be used in this action, which will reduce the attorney fees expended in this case. So it all evens out.

I am constrained to note that by making this patently ridiculous motion to dismiss or for sanctions, USAA has unnecessarily increased its own legal fees, and has caused Lynch and NKA to incur completely unnecessary fees—a fact the court will remember at fee award time should plaintiff prevail in this action.

### III. *Lynch's Motion for Conditional Class Certification*

Plaintiff seeks conditional certification and court-facilitated notice in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA specifically contemplates employees pursuing their claims collectively:

> An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The collective action procedure allows for efficient adjudication of similar claims, so "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

An FLSA collective action under section 216(b) contains three essential features. First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. Second, the statute of limitations runs on each employee's claim until his individual Consent Form is filed with the court. Third, to better serve the FLSA's "broad remedial purpose," courts may order notice to other potential similarly situated employees to inform them of the opportunity to opt-in the case. *Id.* at 173, 110 S.Ct. 482.

In light of these features, court-supervised notice is the preferred method for managing the notification process for several reasons: it avoids "multiplicity of duplicative suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations. *Id.* at 171–72, 110 S.Ct. 482.

### A. *The FLSA's Two–Stage Certification Process*

Federal district courts in New York have adopted a two-step approach to de-

termine whether certification is proper. *See Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y.2007). The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. *Id.* Once the court determines that potential opt-in plaintiffs may be "similarly situated" for the purposes of authorizing notice, the court "conditionally certifies" the collective action, and the plaintiff sends court-approved notice to potential members. *Id.* Those potential plaintiffs may then elect to opt-in pursuant to section 216(b) by filing Consent Forms with the court. *Id.* Once notice is accomplished, the action proceeds as a collective action throughout the discovery process. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y.2006).

During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated. *La Belle Farm*, 239 F.R.D. at 367. This stage typically occurs on a defendant's motion for decertification. As a result of this two-step stage, the initial "conditional certification" determination is merely a preliminary finding. *Lee*, 236 F.R.D. at 197. If, after discovery, it is apparent that plaintiffs and others are not similarly situated, the court may "de-certify" the class and dismiss the claims of the opt-in plaintiffs without prejudice. *See La Belle Farm*, 239 F.R.D. at 367.

### B. The Standard for Conditional Class Certification and Court–Facilitated Notice

The burden for demonstrating that potential plaintiffs are "similarly situated" is very low at the notice stage. Plaintiff need only make a "modest factual showing" that plaintiff and potential collective action members were victims of "a common policy or plan that violated the law." *Id.* at 367–68 (concluding that plaintiffs had "easily made the modest showing that is required of them at this preliminary stage" through their allegations of common wage and overtime practices that violate the FLSA). Plaintiff's burden is thus "minimal" at this stage. *Id.* at 368; *see also Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 30, 2005) ("Plaintiffs ... face only a very limited burden ... purposes of proceeding as a collective action.") (internal citations and quotation marks omitted). This initial burden is limited, in part, because "the determination that the parties are similarly situated is merely a preliminary one" and may be modified or reversed at the second stage certification stage. *Lee*, 236 F.R.D. at 197.

■ At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. *See Barrus v. Dick's Sporting Good, Inc.*, No. 05–CV–6253, 2006 WL 3373117, at *4 (W.D.N.Y. Nov. 3, 2006). Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated. *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y.2005) ("The focus ... is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been violated."); *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 262 (S.D.N.Y.1997) ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that

a definable group of similarly situated plaintiffs can exist here.").

Because courts do not weigh the merits of the claim, extensive discovery is not necessary at the notice stage. *See Masson v. Ecolab, Inc.*, No. 04–CV–4488, 2005 WL 2000133, at *14–15 (S.D.N.Y. Aug. 17, 2005) (noting defendant's stated need for "extensive" discovery does "not bear on whether this case can proceed as a collective action. Indeed, approval of this collective action is for purposes of discovery as well as notice."); *La Belle Farm*, 239 F.R.D. at 368 ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice."). As this court noted in *La Belle Farm*,

> If the fruits of full discovery reveal that plaintiffs are not, in fact, similarly situated to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are similarly situated, I may later decertify the class or divide it into subclasses, if appropriate.

*Id.* at 369 (internal citations and quotation marks omitted). Thus, any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification. *Id.* ("For the moment, the factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA.").

██ Additionally, the standard for class certification under Federal Rule of Civil Procedure 23 is not relevant to an FLSA collective action. Unlike Rule 23, section 216(b) of the FLSA requires no showing of numerosity, typicality, commonality, or representativeness. *Id.* (citing *Young*, 229 F.R.D. at 54). As a result, the "similarly situated" standard for certifying a 216(b) collective action is "considerably more liberal than class certification under Rule 23." *Id.*

██] Finally, informal efforts by plaintiffs and their counsel to provide notice to potential opt-ins through advertisement letters or other means are not factors to be considered by courts when determining whether to approve court-authorized notice. *See Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988).

## C. Plaintiff Has Met the "Similarly Situated" Standard

Lynch's motion for conditional class certification and court-authorized notice is supported by the allegations in his complaint, the deposition testimony of four opt-in plaintiffs and USAA's 30(b)(6) representative, and three opt-in plaintiff declarations. Courts have routinely authorized notice to putative class members on far more modest records than present in this case. *See, e.g., Sipas v. Sammy's Fishbox, Inc.*, No. 05–CV–10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying class on basis of three affidavits and complaint's allegations); *Masson*, 2005 WL 2000133, at *14 (conditionally certifying on basis of three opt-in plaintiffs).

██ Conditional class certification is appropriate under the facts of this case because the evidence far exceeds that which is necessary to meet the low "similarly situated" standard. First, all special investigators perform their jobs under the same management structure. Second, all special investigators perform the same job duties, namely the investigation of questionable, suspicious or fraudulent claims. They are all subject to the same job description and perform their jobs under the same performance standards. All special investigators receive the vast majority of their new referrals from a centralized location, USAA's corporate headquarters in San Antonio. Special investigators do not

have the authority to decline a referral because all referrals generated by the home office must be investigated. Regardless of whether the special investigator is assigned to auto, property, casualty, or theft/fire claims, they all conduct their investigations in accordance with *USAA SIU Standard Operating Guidelines.* Special investigators interview witnesses and insureds, obtain statements, take photographs, and use other investigatory tools such as the ISO and NICB databases. They also have relationships with local law enforcement and NICB agents to help them in their investigations. If special investigators want to use a private investigator or an outside vendor during their investigations, they must first obtain approval from their Regional Manager. Even if they obtain approval, they are limited to a pre-approved vendor list.

After the special investigators complete their investigations, they participate in meetings with their Regional Manger, the claims adjuster, and USAA attorneys. During these meetings, the special investigators' responsibility is to report the facts of their investigation. In accordance with the *USAA SIU Standard Operating Guidelines,* special investigators are not to give a recommendation or provide their opinion as to whether the claim is fraudulent. Additionally, special investigators do not decide whether an Examination Under Oath of the insured is required, or whether to pay or deny a claim.

Given that Lynch shares these similar job duties with other USAA special investigators, his motion for conditional certification should be granted.

### D. Plaintiff Sufficiently Alleges that USAA Misclassified its Special Investigators as "Exempt" from the FLSA

Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of "misclassifying." Recently, in *Patton v. Thompson Corp.,* the Eastern District of New York concluded that § 216(b)'s "similarly situated" standard had been satisfied where the plaintiff alleged that she had worked over forty hours per week without overtime compensation, that her position was misclassified as exempt, that other employees in her position had the same job duties, and that the employer had admitted it paid all employees in plaintiff's position in the same manner and had classified the position as exempt. 364 F.Supp.2d 263 (E.D.N.Y. 2005). Similarly, the *Lee* court approved judicial notice, finding plaintiff's allegation that employees were misclassified as independent contractors "sufficiently alleged a common policy or plan." 236 F.R.D. at 198.

The deposition testimony, declarations, and allegations attached to Lynch's motion establish that USAA misclassified its special investigators as exempt employees and failed to pay them overtime compensation for hours worked above forty per week. As confirmed by USAA's 30(b)(6) witness, the Assistant Vice President responsible for special investigators, the policies and practices relative to the misclassification of special investigators do not vary, but rather affect all special investigators the same nationwide. In light of this strong evidence, it is clear that Lynch met his burden of showing that he is "similarly situated" to other special investigators and Lynch's motion should therefore be granted.

### E. Lynch's Collective Action is Appropriate for Court Facilitated Notice

Having decided that Lynch's complaint states a colorable claim for relief, this

court will now turn to Lynch's request for court-authorized notice informing potential plaintiffs of their opportunity to "opt-in" to the present lawsuit.

The Supreme Court has held that the benefits to the judicial system of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann–La Roche*, 493 U.S. at 170, 110 S.Ct. 482. Courts are encouraged to become involved in the notice process early, to insure "timely, accurate, and informative" notice and to help maintain control over the litigation. *Id.* at 172, 110 S.Ct. 482. The *Hoffmann–La Roche* Court further held that a court-approved notice to potential plaintiffs in FLSA collective actions is proper in "appropriate cases." *Id.* at 169, 110 S.Ct. 482. Determining what is an "appropriate case" lies within the "discretion" of district courts. *Id.*

The instant action is just such an "appropriate case." Prompt court action is needed because potential opt-in plaintiffs' claims are in risk of being extinguished by the running of the statute of limitations. *See Hoffmann*, 982 F.Supp. at 260. Unlike Rule 23 class actions, the statute of limitations for those who have not filed Consent Forms is not tolled by the commencement of this action. *Id.* As a result, the statute of limitations continues to run on each individual's claim until they file a Consent Form with this court. *Id.* Thus, every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover. Court-facilitated notice will prevent the continued erosion of these claims.

Moreover, such court-authorized notice will promote judicial economy. Because identical issues of law and fact exist amongst all of USAA's special investiga-

tors, collective resolution of their claims—at least during the discovery phase—benefits the judicial system. *See Hoffmann–La Roche Inc.*, 493 U.S. at 170, 110 S.Ct. 482. Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring Lynch and opt-in plaintiffs to file separate cases in multiple federal district courts would not be an economic use of judicial resources.

In addition, notice is warranted because Lynch has established by submission of additional Consent Forms and declarations that other putative class members exist who may be interested in opting into this litigation. These special investigators were employed during the same liability period and therefore were subject to the same unlawful compensation policy.

For all of these reasons, Lynch's proposed judicial notice form (Srey Certification Decl., Ex. A), is approved. A signed copy is attached to this decision.

## F. USAA is Ordered to Produce a List of Special Investigators

Because all special investigators employed by USAA in the past three years are "similarly situated" employees for FLSA purposes, their identification is necessary so that Lynch can provide them with notice of this action. *See Hoffmann–La Roche Inc.*, 493 U.S. at 170, 110 S.Ct. 482; *Patton*, 364 F.Supp.2d at 266. Therefore, USAA is ordered to produce to Lynch the following within five days of this court's order:

> A list, in electronic and importable format, of all persons employed by defendant as special investigators from three years prior to the date of this order to the present, including their name, address, telephone number, dates of employment as a special investigator, loca-

tion of employment, date of birth, and last four digits of their Social Security Number.

## IV. *Conclusion*

For the foregoing reasons, defendant USAA's motion to dismiss plaintiff William Lynch's collective action complaint, or in the alternative, for sanctions pursuant to 28 U.S.C. § 1927, is denied. Plaintiff's motion for conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing USAA to produce a list of special investigators, is granted.

This constitutes the decision and order of the court.

*Exhibit A*

### NOTICE OF PENDENCY OF LAWSUIT

**TO: ALL PRESENT AND FORMER SPECIAL INVESTIGATORS WHO WORKED FOR UNITED SERVICES AUTOMOBILE ASSOCIATION FROM DATE [3 YEARS PRIOR TO THE MAILING DATE] TO THE PRESENT.**

**RE: FAIR LABOR STANDARDS ACT OVERTIME LAWSUIT FILED AGAINST UNITED SERVICES AUTOMOBILE ASSOCIATION**

### *INTRODUCTION*

The purpose of this Notice is to inform you of a collective action lawsuit in which you are potentially "similarly situated" to the Named Plaintiff William Lynch, to advise you of how your rights may be affected by this action, and to inform you of the procedure to make a claim if you choose to do so.

### *DESCRIPTION OF THE ACTION*

On January 24, 2007, an action was filed against Defendant United Services Automobile Association ("USAA") on behalf of the Named Plaintiff William Lynch and all other similarly situated individuals who worked as "Special Investigators" for USAA during the past three years (collectively referred to as the "potentially similarly situated group"). Specifically, the action alleges that these individuals are owed overtime pay under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, for hours worked in excess of forty (40) per week. Plaintiff also seeks an additional amount as liquidated damages, as well as attorneys' fees and costs. This litigation is currently in the early pretrial stage.

USAA denies Plaintiff's allegations and maintains that Plaintiff and the potentially similarly situated group are exempt from the overtime provisions of the FLSA.

### *PERSONS ELIGIBLE TO RECEIVE THIS NOTICE*

The United States District Court Southern District of New York has ordered this FLSA Notice be distributed to:

All persons who work or have worked for United Services Automobile Association as a Special Investigator anywhere in the United States at any time from [DATE] to the present.

### *YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT*

If you fit the definition above, you may choose to join this action by mailing or faxing the attached "Plaintiff Consent Form" to Plaintiff's counsel at the following address:

Nichols Kaster & Anderson, PLLP

Attn. Rachhana T. Srey

4600 IDS Center, 80 South Eighth Street

Minneapolis, MN 55402–2242

Toll–Free Telephone: (877) 448–0492

Facsimile: (612) 215–6870

Website: www.overtimecases.com

The "Plaintiff Consent Form" must be received in sufficient time for Plaintiff's counsel to file it with the Court on or before [DATE].

### EFFECT OF JOINING OR NOT JOINING THIS LAWSUIT

If you choose to join this action, you and USAA will be bound by any ruling, judgment, award or settlement, whether favorable or unfavorable. If you do not join this action, you will not be bound by any ruling, judgment, award, or settlement, entered in this case, favorable or unfavorable. If you do not to join this action, you are free to take action on your own.

If you file a "Plaintiff Consent Form" your continued right to participate in this action will depend upon a later decision by the Court that you and the named Plaintiff are "similarly situated" in accordance with applicable laws, and that it is appropriate for this case to proceed as a collective action.

### STATUTE OF LIMITATIONS

The FLSA has a maximum statute of limitations of three years. If you choose to join this action, or choose to bring your own action, you may be able to recover damages if you were improperly denied overtime compensation only during weeks worked within three years of the date you file your "Plaintiff Consent Form." If you choose not to join in this action or file your own action, some or all of your potential claims may later be barred by the applicable statute of limitations.

### NO RETALIATION PERMITTED

The law prohibits retaliation against employees for exercising their rights under the FLSA. Therefore, USAA is prohibited from discharging you or retaliating against you in any other manner because you choose to participate in this action.

### YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this case by filing a Plaintiff Consent Form, you will be agreeing to representation by Plaintiff's Counsel.

Nichols Kaster & Anderson, PLLP

Donald H. Nichols, Paul J. Lukas, and Rachhana T. Srey

4600 IDS Center, 80 South 8th Street

Minneapolis, MN 55402

Toll Free Telephone: (877) 448–0492

Facsimile: (612) 215–6870

Website: *www.overtimecases.com*

The attorneys are being paid on a contingency fee and/or statutory basis, which means that if there is no recovery, there will be no attorneys' fees. If there is a recovery, the attorneys will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. The specific terms and conditions of representation will be contained in a fee agreement entered into by the attorneys and you.

### FURTHER INFORMATION

Further information about this lawsuit or this notice can be obtained by contacting Plaintiff's counsel at the address or toll-free telephone number provided above.

374

## CONCLUSION

THIS NOTICE AND ITS CONTENT HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, THE HONORABLE COLLEEN McMAHON, UNITED STATES DISTRICT COURT JUDGE. THE COURT HAS MADE NO DECISION IN THIS CASE ABOUT THE MERITS OF PLAINTIFF'S CLAIMS OR OF DEFENDANT'S DEFENSES.

### USAA (UNITED SERVICES AUTOMOBILE ASSOCIATION) PLAINTIFF CONSENT FORM

I hereby consent to join the lawsuit against Untied Services Automobile Association., ("USAA") as a Plaintiff to assert claims against it for wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* any applicable state laws. During my employment there were occasions when I worked over 40 hours per week for USAA as a Special Investigator and was not paid for all hours worked.

Signature            Date

Print Name

Address (with apartment number if applicable)

City, State, Zip Code

Home Phone     Work Phone     Cell Phone

E-Mail Address

Social Security Number (last 4 digits)

Emergency Contact (in case we lose contact with you)

Mail or Fax to:    Fax (612)215-6870
Nichols Kaster & Anderson, PLLP
(Attn: Rachhana T. Srey)
80 South 8th Street, Suite 4600,
Minneapolis, MN 55402
Toll Free Telephone: (877)488-0492