Kyle PIPPINS, Jamie Schindler, and Edward Lambert, Individually and on Behalf of all Others Similarly Situated, Plaintiffs,

v.

KPMG LLP, Defendant.

No. 11 Civ. 377 (CM)(JLC).

United States District Court, S.D. New York.

Feb. 3, 2012.

Justin Mitchell Swartz, Adam T. Klein, Dana Gale Sussman, Elizabeth Hartley Wagoner, Rachel Megan Bien, Seth M. Marnin, Outten & Golden, LLP, New York, NY, Gregg I. Shavitz, Hal B. Anderson, Keith M. Stern, Susan Hilary Stern, Shavitz Law Group, P.A., Boca Raton, FL, for Plaintiffs.

Andrew W. Stern, Gary Frederick Bendinger, Alex Jason Kaplan, Sidley Austin LLP, New York, NY, Jennifer Altfeld Landau, Michael C. Kelley, Wesley D. Felix, Sidley Austin LLP, Los Angeles, CA, Michael Dana Warden, Sidley Austin LLP, Washington, DC, Steven T. Catlett, Sidley Austin LLP, Chicago, IL, for Defendant.

### DECISION AND ORDER DENYING DEFENDANT'S OBJECTIONS TO THE DISCOVERY ORDER OF MAGISTRATE JUDGE JAMES L. COTT DATED OCTOBER 7, 2011

McMAHON, District Judge:

On January 19, 2011, Plaintiffs Kyle Pippins, Jamie Schindler, and Edward Lambert, Opt–In Plaintiffs Samuel Bradley and Keeley Young, and other declarant Mark Litchfield (collectively, "Plaintiffs") brought this action under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and under the New York Labor Law, Article 19, § 650 *et seq.*, and supporting New York State Department of Labor regulations (collectively, the "NYLL"), against Defendant KPMG LLP ("KPMG"), seeking to recover what Plaintiffs allege are improperly denied overtime wages.

On August 12, 2011, KPMG filed a motion seeking a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure to limit the scope of its preservation obligations. The issue presented by the motion was "whether KPMG must preserve computer hard drives for thousands of former employees who fall within a potential nationwide FLSA collective and/or a putative New York State class, or whether random sampling of a small number of hard drives would be sufficient to fulfill KPMG's preservation obligations." *Pippins v. KPMG LLP*, No. 11 Civ. 377(CM)(JLC), 2011 WL 4701849, at *1 (S.D.N.Y. Oct. 7, 2011) (the "Order"). On October 7, 2011, Magistrate Judge Cott denied KPMG's motion without prejudice, and ordered KPMG to preserve all existing hard drives until: (1) further order of the court; or (2) the parties reached an agreement on a methodology to obtain an appropriate sample.

KPMG appeals from the Order, pursuant to Federal Rule of Civil Procedure 72(a), contending that it is clearly erroneous or contrary to law because the Magistrate: (1) adopted an "unreasonably broad" definition of key players, holding that every "potential" member of a putative class action or a proposed FLSA collective action is a "key player" whose hard drives must be preserved; (2) ordered KPMG to preserve the hard drives of all former Audit Associates even if I denied the Motion to Certify, because there is the "potential" that some might file individual lawsuits in the future; (3) ordered KPMG to preserve all former Audit Associate without determining whether the cost of preserving the hard drives is proportional to the hard drives' likely benefit in this litigation; and (4) improperly imposed an affirmative obligation on KPMG in response to KPMG's motion for a protective order.

On the basis of these purported errors, KPMG ask this Court to: (1) set aside Judge Cott's Order; and (2) grant KPMG's motion for a protective order. For the reasons set forth below, KPMG's motion is DENIED in its entirety.

## I. Background

### A. The Parties

Plaintiffs in this suit were employed by KPMG as Audit Associates or Audit Associate Seconds (collectively, "Audit Associates"). Plaintiffs worked at KPMG offices in six different states: Florida, Nebraska, New Jersey, New York, Texas, and Washington.

KPMG is an audit, tax, and advisory firm that provides its services through its 87 offices across the United States. KPMG is one of the so-called "Big Four" accounting firms, along with Deloitte, Ernst & Young, and PricewaterhouseCoopers.

### B. The Dispute

#### 1. In General

■ The FLSA requires employers to pay their employees overtime wages—calculated at a rate of "one and one-half times the regular rate"—for each hour worked in excess of 40 hours per week, 29 U.S.C. § 207(a)(1), subject to certain exemptions, 29 U.S.C. § 213(a)(1). Of pertinence here, the FLSA's overtime protections do not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

> To be exempt as an administrative employee, the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "include[ ] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)–(3). To fall into the learned professional exemption, the employee's primary duty must be the performance of work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a)(2)(i).

*Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 630 (E.D.Cal.2009). These exemptions are affirmative defenses to overtime pay claims, and employers "bears the burden of proving that a plaintiff has been properly classified as an exempt employee."

*Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361(PGG), 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010).

■ To enable employees to enforce their rights under the FLSA, section 216(b) of the FLSA creates a private right of action to recover unpaid overtime compensation, and provides that employees may pursue their claims collectively. 29 U.S.C. § 216(b). The collective action procedure was designed to promote the "efficient adjudication of similar claims," so that "similarly situated" employees may pool resources to prosecute their claims. *Lynch v. U.S. Auto. Assoc.*, 491 F.Supp.2d 357, 367 (S.D.N.Y.2007) (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). Unlike Federal Rule of Civil Procedure 23, however, the FLSA only authorizes opt-in collective actions. *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 626 (E.D.Cal.2009). In an opt-in collective action, an employee must consent in writing to join the suit, and that consent must be filed with the court. *Lynch*, 491 F.Supp.2d at 367.

■ Like the FLSA, the NYLL also provides that employers must pay overtime wages to employees. *Williams v. Skyline Automotive Inc.*, No. 11 Civ. 4123(SAS), 2011 WL 5529820, at *3 (S.D.N.Y. Nov. 14, 2011) ("The New York Labor Law generally mirrors the guarantees and exemptions of the FLSA with regards to overtime pay."). "However, some employees exempt from the FLSA's overtime provisions are entitled to an overtime wage of at least 'one and one-half times the basic minimum hourly rate.'" *Id.* Unlike the FLSA, however, a NYLL suit can be brought as a Federal Rule of Civil Procedure 23 class action.

Plaintiffs allege that KPMG willfully misclassified Audit Associates as exempt employees, and thereby improperly denied them overtime wages. Plaintiffs also allege that KPMG failed to keep accurate records of the hours that Audit Associates worked. Plaintiffs seek to proceed as a collective action pursuant to the FLSA, and as a class action for their NYLL claim (under Federal Rule of Civil Procedure 23(b)(3)). In order prevail and establish their damages, Plaintiffs will

need to demonstrate that they worked over 40 hours per week and did not receive overtime wages.

KPMG's principal merits defense to Plaintiffs' action is that Audit Associates fall under the administrative and professional exemptions, and are therefore not entitled to overtime wages. Whether employees qualify as professionals and/or administrators presents a fact-specific inquiry. *See* 29 C.F.R. § 541.700. As such, while KPMG bears the burden to prove that Plaintiffs fall under one of these exemptions, Plaintiffs may be required to present individualized evidence of their specific job duties and the work they performed.[1]

## 2. Procedural History

On January 19, 2011, Plaintiffs brought this action under the FLSA and NYLL against KPMG.

On April 6, 2011, Plaintiffs filed a motion seeking conditional certification of a collective action, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing KPMG to produce contact information for current and former KPMG Audit Associates (the "Motion to Certify"). (ECF No. 33.) In order to obtain conditional class certification, Plaintiffs were required to demonstrate that Audit Associates are "similarly situated" with respect to the alleged FLSA violations. 29 U.S.C. § 216(b); *see also Lynch v. U.S. Auto. Assoc.*, 491 F.Supp.2d 357, 368 (S.D.N.Y.2007). If the Court found that Audit Associates were similarly situated and granted conditional certification, it would authorize the sending of notice to all potential opt-in plaintiffs—who could elect to opt-in to the collective action by filing consent forms with the Court—and allow the case "to proceed as a collective action through discovery." *Lynch*, 491 F.Supp.2d at 368. On the other hand, if the Court denied conditional certification, no notice would issue, and Plaintiffs could proceed individually with their FLSA claims. Plaintiffs could move for re-

consideration at the close of discovery, however. *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 3399067, at *12 (S.D.N.Y. Aug. 12, 2008) (granting plaintiffs' renewed motion for conditional certification after additional discovery).

Plaintiffs did not move simultaneously for an order certifying a New York Labor Law class under Federal Rule of Civil Procedure 23, and no such motion has yet been made.

On April 15, 2011, I stayed discovery until I decided the motion for conditional certification. (*See* ECF No. 79.)

On May 23, 2011, I referred the case to Judge Cott to handle the discovery dispute that is now the focus of this motion. (ECF No. 65.)

On June 27, 2011, upon KPMG's written request, I confirmed my April 15, 2011 oral order that there would be no discovery until I decided the motion for conditional certification. (ECF No. 79.) At this time, no party alerted me to the difficulties that this stay was apparently having on the course of the parties' preservation negotiations.

On August 12, 2011, after "extensive negotiations between the parties and several mediation efforts by the Court," Order at *2, KPMG filed a motion seeking a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure to limit the scope of its preservation obligations. The issue presented by the motion was "whether KPMG must preserve computer hard drives for thousands of former employees who fall within a potential nationwide FLSA collective and/or a putative New York State class, or whether random sampling of a small number of hard drives would be sufficient to fulfill KPMG's preservation obligations." *Id.* at *1. Specifically, KPMG sought a protective order requiring it to preserve only a random sample of 100 former Audit Associates' hard drives from among those already preserved in the course of this and other litigations.[2]

---

1. I say "may be required" because I have already instructed the parties to conduct discovery into—and brief, if they see fit—"the issue of why all Audit Associates are classified as exempt, without regard to their personal situations." *Pippins v. KPMG LLP*, No. 11 Civ. 377(CM)(JLC), 2012 WL 19379, at *15 (S.D.N.Y. Jan. 3, 2012).

2. KPMG had previously proposed a limited preservation of 250 hard drives. (Pls.' Opp'n to Def.'s Objections at 9 (ECF No. 124).) The Magistrate had proposed that "KPMG preserve 750 of the hard drives it has and one-third of departing Audit Associates' hard drives going forward,"

Alternatively, KPMG sought an order compelling Plaintiffs to bear the cost of preserving any more than the 100 hard drives it had suggested be preserved.

The hard drives come from former and departing Audit Associates' laptop computers. *Id.* at *2. Plaintiffs, based on their recollections regarding their former hard drives, anticipate that the hard drives at issue will contain "such data as the usage information, log-in/log-out information, application records, forms, and other contents stored on the laptops in the course of the business day, which would be helpful in showing both [1] the range of hours during which they worked and [2] the substance of their work." *Id.* at *2 (quoting Pls.' Opp'n to Def.'s Mot. for Protective Order at 3 (ECF No. 96)). Plaintiffs concede that they do not know exactly what is on the hard drives, but argue that that is because KPMG has refused to either show Plaintiffs and Judge Cott the hard drives, or describe their contents.

KPMG's primary argument in support of its motion for a protective order was that the burden of preserving the hard drives of all former and departing Audit Associates is disproportionate to the potential benefit. *Id.* at *3. KPMG estimates the cost of preserving each hard drive is approximately $600, and states that it is preserving more than 2,500 hard drives of former Audit Associates, for a total of $1,500,000 or more. *Id.* KPMG argues that these costs "swallow the amount at stake" in the litigation. *Id.* On the benefit side of the analysis, KPMG argues that Plaintiffs have failed to explain the relevance of the hard drives, which at best contain information duplicative of other material KPMG has preserved. KPMG sought an order that would require it to preserve only a random sample of 100 hard drives from among those hard drives of former Audit Associates that it has already preserved in the course of this and other litigations, against which the parties could then apply keyword searches using terms proposed by

Plaintiffs to produce responsive material. *Id.* at *2.

Plaintiffs opposed KPMG's motion for a protective order on the ground that any action that would result in the destruction of hard drives is premature, because there has been insufficient discovery to enable the parties and the Court "to knowledgably craft a plan for preservation and production." *Id.* Plaintiffs argued that "it would be difficult, if not impossible, to generate search terms without the opportunity to first determine what the hard drives contain." *Id.* at *9. Further, Plaintiffs contested that using search terms would capture all relevant information on the hard drives. Plaintiffs also questioned KPMG's preservation cost estimates in light of their inability to examine the bases for KPMG's assessments, and took issue with KPMG's analysis of the relevance of the hard drives.

Plaintiffs also asked the Magistrate to provide further guidance about how to proceed.

Both sides agreed that sampling should be used to select a smaller number of hard drives for preservation in order to keep down costs. However, the parties could not agree on a methodology for sampling the hard drives. During the negotiations preceding KPMG's motion for a protective order, Plaintiffs informally requested multiple times that, among other things, KPMG let it review five randomly selected hard drives so that Plaintiffs "can determine whether this issue is even worth fighting about." (Swartz Decl. in Opp'n to KPMG's Mot. for a Protective Order ("Swartz Decl.") Ex. B at 2, 4 (ECF No. 97); Swartz Decl. Ex. R.) In response, KPMG's attorneys called the question "unprofessional." (Swartz Decl. Ex. B at 1 ("Instead of providing the information Plaintiffs requested, KPMG's counsel has been dismissive of Plaintiffs' questions, calling them 'unprofessional,' 'absurd,' and not 'in good faith,' and providing only limited and often vague responses.").) KPMG also refused Plaintiffs' request for a Federal Rule of Civil Procedure 30(b)(6) deposition to learn, in part, what the hard drives actually contain. (*Id.* at 1–2.)

and that "the hard drives be selected based on negotiated criteria in an effort to achieve representativeness and that the parties negotiate a

stipulation on the admissibility of the hard drives." (Pls.' Opp'n to Def.'s Objections at 10 n. 9.)

After KPMG rejected their entreaties, Plaintiffs sought the same from Judge Cott in opposition to KPMG's motion for a protective order. Order at *4.

KPMG, hiding behind the stay of discovery, insisted it could not produce even one hard drive for inspection by Plaintiffs. It also refused to respond to any question regarding the content of the hard drives, furnish Plaintiffs' access to any hard drives, inform Plaintiffs whether the data on the hard drives might be derived from other sources, or discuss the costs of possible alternatives to preserving the data on the hard drives. (Swartz Decl. Ex. B at 3–4; *see also* Swartz Decl. Ex. S at 1 (KPMG letter rejecting Plaintiffs' request to review five hard drives).) Instead, KPMG made a series of "take it or leave it" offers, and sought to have Plaintiffs agree that KPMG only had to preserve a smaller sample of the hard drives without giving Plaintiffs the opportunity to review the contents of any hard drive(s) first. (*See, e.g.,* Swartz Decl. Ex. M at 1.) KPMG also demanded that Plaintiffs offer search terms to run against the electronic files on the hard drives in order to narrow the scope of material to be reviewed—which strikes me as not an unreasonable request. (Swartz Decl. Ex. S at 1.)

Neither side bothered to ask me whether, in my opinion, the stay prevented KPMG from producing any hard drives for inspection, so that negotiations over how to carry out a procedure that both sides agreed would be beneficial (sampling) could proceed in a meaningful way. Had I been contacted, I would have immediately ordered KPMG to produce a small number of hard drives so that Plaintiffs' counsel could peruse them, and that would have been the end of the matter. In the future, if the parties or the learned Magistrate Judge have any questions about the scope of any order of this Court—especially when the order is being relied on to block meaningful case management—I suggest that they save a lot of time and expense by asking me for guidance. I am not in the business of preventing our excellent magistrate judges from doing their jobs.

### 3. The Order

On October 7, 2011, while the Motion to Certify was *sub judice* in this Court, Judge Cott denied KPMG's motion for a protective order, without prejudice to renewal once the motion to certify was decided. In the interim, he ordered KPMG to preserve all existing hard drives of former Audit Associates until: (1) further order of the Magistrate Judge; or (2) an agreement on a methodology to obtain an appropriate sample was reached by the parties. Order at *10.

Judge Cott began by discussing the scope of KPMG's preservation obligations. He evaluated whether the information Plaintiffs sought to preserve was: (1) relevant; (2) non-duplicative; and (3) created by or for "key players" in the litigation, meaning those who are "likely to have relevant information." *Id.* at *6 (citing *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217–18 (S.D.N.Y.2003) ("*Zubulake IV*")). He determined that KPMG had not established that it had no duty to preserve the hard drives. *Id.* at *8.

Judge Cott found that plaintiffs who opted in to the collective action would have to prove: (1) what job duties they performed; and (2) the hours they worked. *Id.* at *6. Accordingly, he found that "any material contained on the hard drives that tends to show either the Audit Associates' job responsibilities or the hours they worked is relevant." *Id.* Judge Cott further held that KPMG failed to establish that the drives were not relevant, or that their contents were duplicative of other material maintained by KPMG, because KPMG's refusal to produce even one drive for examination meant that it was unclear what might be on the hard drives. *Id.* He noted—correctly—that relevance is a broad concept and that the drives might well contain relevant information. *Id.* And he noted that it could not be presumed that the data on the hard drives duplicated other information:

> Because the hard drives contain the contents of Audit Associates' individual laptops, they may contain materials that would not otherwise be preserved by KPMG as the company has described the scope of its current preservation, such as drafts, personal notations or memoranda,

or correspondence among Audit Associates and other KPMG employees.

*Id.* at *8.

Judge Cott went on to observe that even relevant, non-duplicative materials only had to be preserved if they were created by or for so-called "key players" in a lawsuit—defined as those who are "likely to have relevant information." *Id.* at *6 (quoting *Zubulake IV*, 220 F.R.D. at 217–18). Judge Cott held that, "until the pending Motion to Certify is resolved, each and every Audit Associate whom the company deemed was exempt from overtime payments under the FLSA is a potential plaintiff and thus could be found to be a 'key player.'" *Id.*

Judge Cott explicitly did not reach "whether all potential members of the FLSA collective and all members of the putative New York Labor Law class will be key players" if the Court granted the Motion to Certify. *Id.* at *7. He nonetheless reasoned that KPMG had a duty to preserve every former Audit Associate's hard drive attached when Plaintiffs first brought this lawsuit, because at that point it became foreseeable that each and every Audit Associate could be a potential plaintiff. He also held that this duty would persist even if the Court denied the motion for certification, because of the potential individual actions that could result if I denied the certification motion. Obviously, this last ruling by Judge Cott can and should be vacated, because the certification motion was granted.

Finally, while noting that "courts in this district have cautioned against the application of a proportionality test as it relates to preservation," Judge Cott tried to conduct some sort of proportionality analysis. However, the Magistrate found himself stymied by KPMG's refusal to provide any information that would be needed to balance the value of any data contained on the hard drives against the cost of preserving it. So he concluded, "At this point in the litigation, it is unclear whether an application of a proportionality test would weigh in favor of a protective order," *id.* at *8, and denied the motion for a protective order. Judge Cott granted Plaintiffs' request to direct KPMG to preserve the hard drives—for now.

Judge Cott acknowledged that preserving the hard drives was expensive. But he concluded that it would be premature to permit the destruction of any hard drives before discovery, and noted that KPMG's "ongoing burden is self-inflicted to a large extent," because of its recalcitrance. *Id.* at *8–9. He highlighted KPMG's reluctance to work with Plaintiffs to generate a reasonable—and less burdensome—method of sampling the hard drives. He opined that KPMG could have allowed Plaintiffs to review the contents of one or a few hard drives, which would have enabled Plaintiffs to "propound targeted requests for specific files contained within the hard drives at lesser cost." *Id.*

The Magistrate expressed the hope that "the parties should be able to make such a determination promptly once the Motion to Certify is resolved and the stay of discovery is lifted." *Id.* at *8. He further suggested that the temporary preservation he was ordering—which he contrasted with the permanence of destroying the hard drives—could be limited via sampling after this Court decided the certification motion and discovery proceeds.

Judge Cott also rejected KPMG's alternative request to shift the cost of preservation to Plaintiffs, again on the ground that KPMG had "failed to demonstrate that the discovery materials contained on the hard drives are of only marginal relevance and that it would be unduly burdensome to continue its current preservation efforts while the Motion to Certify is pending." *Id.* at *10.

On October 28, 2011, KPMG filed its Objections, and asked this Court to overturn—or substantially modify—the Order. (ECF No. 111.) On November 7, 2011, the Chamber of Commerce of the United States of America (the "Chamber of Commerce") filed an amicus brief in support of KPMG's position. (*See* Br. for *Amicus Curiae* Chamber of Commerce of the U.S. of Am. in Supp. of Def.'s Objections to the Magistrate's Oct. 11, 2011 Order (ECF No. 116)).

### 4. The Court Conditionally Certifies the FLSA Collective Action

On January 3, 2012, this Court granted Plaintiffs' motion to conditionally certify a

nationwide FLSA opt-in class of Audit Associates. *Pippins v. KPMG LLP,* No. 11 Civ. 377(CM)(JLC), 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) (the "Conditional Certification Order"). The stay of discovery was automatically lifted when that decision issued, and I ordered the parties to conduct on an expedited basis "discovery relating to the issue of why all Audit Associates are classified as exempt, without regard to their personal situations ... with an eye to having someone (probably Plaintiffs) move for summary judgment no later than April 27, 2012." *Id.* at *15–16.

In the January 3 decision, I asked the parties to advise me whether this decision rendered their pending discovery dispute, and the appeal from Judge Cott's Order, moot. On January 9, 2012, the parties wrote separately stating that it did not. The parties informed the Court that they had attempted—but failed—to negotiate a resolution.

## II. Now That I Have Granted the Motion to Certify, KPMG's Objections to the Order—Which Directed Preservation Pending My Decision—are Moot

■ A district court may set aside or modify only those portions of a magistrate's order concerning nondispositive matters that are clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Thompson v. Keane,* 95 CIV 2442, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996). An order is "clearly erroneous" only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Thompson,* 1996 WL 229887, at *1 (citations omitted); *see also Siao–Pao v. George,* No. 90 CIV 5376, 1992 WL 236184, at *2 (S.D.N.Y. Sept. 10, 1992). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Thompson,* 1996 WL 229887, at *1. Factual findings by a magistrate judge are reviewed for clear error. *See Norex Petroleum Ltd. v. Access Indus., Inc.,* No. 02 Civ. 1499, 2003 WL 21872389, at *2 (S.D.N.Y. Aug. 7, 2003). A magistrate judge's resolution of discovery disputes deserves substantial deference. *See Siao–Pao,* 1992 WL 236184, at *2; *Thompson,* 1996 WL 229887, at *1.

I cannot begin my discussion of this dispute without recognizing that a complete misinterpretation by everyone of the discovery stay I imposed seems to have contributed to the parties' inability to agree on a sampling methodology. KPMG has inappropriately used the discovery stay as a shield, relying on it in refusing to produce even a few hard drives so Plaintiffs could examine them. Judge Cott put it perfectly: "At this point it is not entirely clear what the hard drives contain, in part because of KPMG's own efforts to keep that information at bay." Order at *7.

■ When the parties told me the order conditionally certifying the collective action did not moot their dispute, they were wrong. Judge Cott denied KPMG's motion for a protective order "without prejudice to KPMG's renewing its application ... once Judge McMahon has resolved the motion to certify and the scope of plaintiffs' representation is clarified." Order at *11. He effectively granted Plaintiffs' recommended alternative to a protective order, and required KPMG to preserve the hard drives, but that was obviously subject to his order permitting KPMG to renew its request for a protective order—which is to say, he did not enter an order requiring permanent preservation. Simply put, Judge Cott did no more than preserve the status quo until the smoke cleared on the issue of conditional certification (and, arguably, opting in, since the scope of Plaintiffs' representation will not be fully "clarified" until we know who wants to be a member of the FLSA class).

In the absence of clarification from this Court over whether KPMG could be required to produce hard drives last fall—for which, sadly, no one asked—the learned Magistrate Judge did a perfectly sensible thing. His Order was not clearly erroneous or contrary to law; quite the contrary, it represented sound litigation management. I thus deny the Objections and affirm his Order—which, the discerning reader will readily intuit, is a moot point, since the moment has come when

KPMG is free to renew its application for a protective order.

I certainly do not intend to reverse Judge Cott's Order on the purported ground that he erred by concluding that KPMG failed to demonstrate that preserving the hard drives was unreasonable. Frankly, the only things that were unreasonable were: (1) KPMG's refusal to turn over so much as a single hard drive so its contents could be examined; and (2) its refusal to do what was necessary in order to engage in good faith negotiations over the scope of preservation with Plaintiffs' counsel, in purported reliance on an order of this Court that it interpreted unreasonably. It smacks of chutzpah (no definition required) to argue that the Magistrate failed to balance the costs and benefits of preservation when KPMG refused to cooperate with that analysis by providing the very item that would, if examined, demonstrate whether there was any benefit at all to preservation.

However, I have no intention of putting Judge Cott through this exercise once again. KPMG has explained why it thinks it is entitled to a protective order—first to Judge Cott, then to me in connection with its appeal. It has had ample opportunity to make its case for a protective order. Plaintiffs have explained why they think no such order should issue, and why KPMG should instead be directed to preserve the drives. I will, therefore, decide the issue.

■ I deny KPMG's motion for a protective order. KPMG must preserve the hard drives—all of them, without exception, for all departed Audit Associates nationwide (since I certified a nationwide FLSA class)—until it either: (1) comes to some agreement with Plaintiffs over a sampling methodology, which both sides agree is the appropriate thing to do; or (2) formally abandons its litigation position that, even if Audit Associates generally are found to be non-exempt employees (an issue yet to be resolved), individual Audit Associates perform work that renders them exempt from the FLSA. Should neither of those occur before the opt-in period expires, then as far is *this* Court is concerned, KPMG can destroy the hard

drives of Audit Associates who: (1) fail to opt into the FLSA class by the opt-in deadline; and (2) cannot be part of the putative (and as yet uncertified) New York Labor Law class, because they did not work in New York during any relevant time period.[3]

### A. The Hard Drives Contain Relevant Information

■ "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R.Civ.P. 26(b)(1). Relevance "is to be interpreted broadly" and includes "'any matter that bears on, or that ... reasonably could lead to other [information] that could bear on, any issue that is or *may be* in the case.'" *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 236 F.R.D. 177, 183 (S.D.N.Y.2006) (quoting *Sherwin–Williams Co. v. Spitzer*, No. 04 Civ. 185, 2005 WL 2128938, at *11 (N.D.N.Y. Aug. 24, 2005)) (emphasis added).

Based on Plaintiffs' recollections regarding their former hard drives, I agree with Judge Cott that the hard drives are likely to contain relevant information. The information on the hard drives will likely demonstrate when the Audit Associates were working (hours) and what they did while at work (duties). This information is obviously relevant in a case asserting violations of the FLSA and NYLL wage and hours law, since Plaintiffs need to establish what type of work they performed in order to prevail on the merits, and how many hours a week they worked in order to collect damages.

KPMG's primary litigation position is that it properly classified all Audit Associates as exempt under the FLSA and the NYLL. If KPMG is right about that—and this Court has directed that someone move for summary judgment on that issue by the end of April, following a period of expedited discovery—it will no longer need to preserve the hard drives of all Audit Associates for the purposes of this lawsuit. In fact, if I issue a decision vindicating KPMG's position as a matter of law and undisputed fact, I will be amenable to an application to transfer the cost of preserving the drives to Plaintiffs pending any appeal.

---

**3.** This Court is not the only court involved. *See* *infra* at 257.

But if Plaintiffs are correct, and all Audit Associates should have been classified as non-exempt and paid overtime, the hard drives almost certainly contain information about how many hours each class member spent at work—which is relevant to how much each is owed (if anything) in damages.

And if neither is correct—if there are disputed issues of fact to resolve, and we have to litigate whether at least some Audit Associates were properly classified as "exempt," based on the work they actually did—then the hard drives plainly contain relevant material, because they presumptively contain each Audit Associate's work output for his/her period of employment.

KPMG could have established otherwise by producing several hard drives to Plaintiffs and Magistrate Judge Cott. Perhaps they would have shown that the average Audit Associates used their computers only to play video games and send personal emails, though I tend to doubt it. But KPMG has established nothing of the sort. It has failed to rebut Plaintiffs' proffer that the first thing they did every morning was log onto their personal computers and the last thing they did before going home was log off. In the era of personal computers, logging on and logging off operates as a kind of time clock. Nor did KPMG rebut Plaintiffs' proffer that their work product could be found on the computers that sat on their desks. Indeed, in view of KPMG's own arguments, the relevance of the work Audit Associates performed is indisputable.

I could nonetheless grant the motion for a protective order, and deny Plaintiffs' request for an order directing preservation pending production of five sample hard drives, if I concluded that the burden or expense of preserving the hard drives outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C)(iii).

■ Preservation and production are necessarily interrelated. The application of the proportionality principle to preservation flows from the existence of that principle under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 26(b)(2)(C)(iii) establishes a "proportionality" test for discovery, and requires courts to limit the "frequency or extent of discovery" where "the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Therefore, proportionality is necessarily a factor in determining a party's preservation obligations. *See Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 n. 10. (S.D.N.Y.2010) ("Reasonableness and proportionality are surely good guiding principles for a court that is considering imposing a preservation order. . . ."); The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery,* 11 Sedona Conf. J. 289, 291 (2010) ("The burdens and costs of preservation of potentially relevant information should be weighed against the potential value and uniqueness of the information when determining the appropriate scope of preservation.").

■ Because proportionality is a "highly elastic concept . . . [it] cannot be assumed to create a safe harbor for a party that is obligated to preserve evidence but is not operating under a court-imposed preservation order." *Orbit One Commc'ns,* 271 F.R.D. at 436 n. 10; *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,* 685 F.Supp.2d 456, 466 (S.D.N.Y. 2010) (Determining the scope of preservation "depends heavily on the facts and circumstances of each case and cannot be reduced to a generalized checklist of what is acceptable or unacceptable."). As Judge Cott appropriately cautioned, proportionality "may prove too amorphous to provide much comfort to a party deciding what files it may delete or backup tapes it may recycle" before that party files a motion for a protective order seeking to have a court define its preservation obligations. Order at *6 (quoting *Orbit One Commc'ns,* 271 F.R.D. at 436). "Accordingly, '[u]ntil a more precise definition is created by rule,' prudence favors [either] retaining all relevant materials," *id.* (quoting *Orbit One Commc'ns,* 271 F.R.D. at 436 (citing *Zubulake IV,* 220 F.R.D. at 218)), or swiftly moving for a protective order. However, proportionality is at the very least

256

relevant to a decision on a motion for a protective order, even if not determinative of it.

But I cannot conclude that the cost of preserving the hard drives outweighs its benefit, as KPMG urges, any more than Judge Cott could, because the record before me is devoid of information necessary to conduct such an analysis. *See* Order at \*8. KPMG refused to allow Judge Cott, or Plaintiffs examine even a single hard drive to ascertain the "benefit" of preservation, so there is nothing in the record before me to inform any decision. Even assuming that KPMG's preservation costs are both accurate and wholly attributable to this litigation—which I cannot verify—I cannot possibly balance the costs and benefits of preservations when I'm missing one side of the scale (the benefits). Neither can I conclude that KPMG has kept hard copy data of everything on the drives that might prove relevant to this action. KPMG cannot simultaneously demand that the Court analyze how long every Audit Associate worked and what every Audit Associate did and also ask the Court to sanction the destruction of what is probably the single best source of that information.

In short, KPMG is hoist on its own petard.

**B. At This Point in the Litigation, All Audit Associates During the Relevant Time Periods Qualify as Key Players**

KPMG also argues that the hard drives need not be preserved because the plaintiff class members do not qualify as "key players" under *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217–18 (S.D.N.Y.2003) ("*Zubulake IV*"). This argument fails to persuade.

■ The "key players" doctrine is intended to define which non-party corporate employees's discoverable material must be preserved. It limits that duty to individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Id.* at 218 (quoting Fed.R.Civ.P. 26(a)(1)(A)). The duty also extends to information that is "relevant to the claims or defenses of *any* party...." *Id.*

(emphasis in original). An employer defendant like KPMG which retains custody of material that belonged to or was used by an employee plaintiff has "discoverable information" that it "may use to support its ... defenses," and that the employee plaintiffs may find useful in supporting their claims. KPMG undoubtedly does not have to preserve the hard drives of every employee who worked with an Audit Associate plaintiff under "key player" reasoning, but it certainly has to preserve the hard drives of the Audit Associates themselves.

All parties are by definition "key players." I gather that KPMG takes the position that the only Audit Associates who are presently "parties" are the named plaintiffs, and so only the named plaintiffs' hard drives really need to be preserved.

■ But that is nonsense. Under *Zubulake IV,* the duty to preserve all relevant information for "key players" is triggered when a party "reasonably anticipates litigation." *Pension Comm. of Univ. of Montreal Pension Plan,* 685 F.Supp.2d at 466; *Zubulake IV,* 220 F.R.D. at 218. At the present moment, KPMG should "reasonably anticipate" that every Audit Associate who will be receiving opt-in notice is a potential plaintiff in this action.

Furthermore, Plaintiffs have another weapon in their arsenal—their action under the NYLL. If a Rule 23 class is certified, every Audit Associate who worked in New York during the relevant limitations period will be a plaintiff in that part of this lawsuit unless he or she affirmatively elects not to participate by opting out. While Plaintiffs have not yet made their Rule 23 motion, the result on the conditional certification motion suggests that their arguments will probably have considerable force. So where New York-based Audit Associates are concerned, KPMG should "reasonably anticipate" litigation with anyone who held the title "Audit Associate" during the relevant period. Each and every one of them is a foreseeable claimant for overtime compensation.

Of course, the FLSA action is an opt-in action, and once notice is given and the opt-in period passes, KPMG will have no obligation, at least in the context of this lawsuit, to

retain the hard drive of any non-New York based Audit Associate who fails to opt-in.[4] It will, however, have to retain the hard drives of all New York based Audit Associates until such time as the Court decides the Rule 23 class certification motion, and, should that motion be granted, putative members of that class decide whether or not to opt-out.

## CONCLUSION

For the reasons discussed above, KPMG's motion is DENIED in its entirety.

The Clerk of the Court is directed to remove the motion at Docket No. 109 from the Court's list of outstanding motions.

---

4. There is at least one other lawsuit pending against KPMG alleging violations of the FLSA and California's Labor Law. *See In re KPMG Wage & Hours Litig.*, No. 07–Civ–04396 (RSWL) (CW) (C.D.Cal.). If this Court takes the lead on the FLSA claims, KPMG will not have to litigate them in California, since I have conditionally certified a nationwide class. However, KPMG may have preservation obligations relating to the California state claims in the Central District of California lawsuit, and nothing said by this Court has any impact on whatever those obligations might be.