Diallo HAMADOU, Muhammad Shahjahan, and Frank Asiedu, on behalf of themselves individually, and on behalf of all others similarly situated, Plaintiffs,

v.

HESS CORPORATION, Hess Mart, Inc., Mamadou Gueye, Tous Phillip, Jorge Ball, ABC Corporation, and John Does 1–3, Defendants.

No. 12 Civ. 0250(CM)(JLC).

United States District Court, S.D. New York.

Jan. 16, 2013.

Benjamin B. Xue, Brian Jeffrey Shenker, Xue & Associates, P.C., New York, NY, for Plaintiffs.

Marvin Mark Goldstein, Carolyn Marie Dellatore, Proskauer Rose LLP, Newark, NJ, for Defendants.

## DECISION AND ORDER

McMAHON, District Judge:

On January 12, 2012, Diallo Hamadou ("Hamadou"), Muhammad Shahjahan ("Shahjahan"), and Frank Asiedu ("Asiedu") (collectively, "Plaintiffs") brought this action for unpaid wages, including failure to pay overtime compensation, under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and under the New York Labor Law ("NYLL"), Article 19 § 650 *et seq.* In the instant motion, Plaintiffs seek conditional certification of a collective action under the FLSA, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing the defendants to produce contact information for current and former hourly employees at the defendants' gas stations in New York State. Hess Corporation, Hess Mart, Inc., Mamadou Gueye ("Gueye") and Phillip Tous ("Tous") (collectively, "Defendants"),[1] owners and/or managers of the various "Hess" gas stations where Plaintiffs worked, oppose the collective action certification and have moved to strike Plaintiffs' class allegations concerning "spread of hours" pay under the NYLL.

For the reasons stated below, Plaintiffs' motion is GRANTED IN PART. Defendants' motion to strike class allegations concerning "spread of hours" pay under the NYLL is DENIED.

## BACKGROUND [2]

Defendants Hess Corporation and Hess Mart, Inc. (together, "Hess") own and/or operate 243 retail gas stations in New York State, including the "Queens Station" where the named plaintiffs have worked. In terms of corporate structure, the gas stations in New York are split into two regions, which are further divided into twenty-three territories. Each territory is headed by a regional marketing representative ("RSM"), who supervises the approximately 10–13 gas stations in his/her territory. Hess gas stations are staffed by at least four to six hourly employees, frequently referred to as "sales associates," "Sr. sales associates," or "cashiers" (collectively, "cashiers"), as well as a general manager, also known as a station manager. Cashiers are primarily responsible for as-

---

1. Defendant Jorge Ball, who resigned from his position at Hess in September of 2011, does not appear to be represented by Defendants' counsel in this action. In their complaint, Plaintiffs also brought claims against ABC Corporation, an unidentified business entity that may have operated as Plaintiffs' employer at Hess, and John Does 1–3, unidentified individuals who may have operated as managers and employers of Plaintiffs at Hess.

2. The background is derived from Plaintiffs' complaint, the Declaration of Brian J. Shenker, July 18, 2012 ("Shenker Decl."), and the exhibits annexed thereto; the Declaration of Marvin M. Goldstein, April 20, 2012 ("Goldstein Decl.") and the exhibits annexed thereto; the Declaration of Edna D. Guerrasio, April 20, 2012 ("Guerrasio Decl., Apr. 20, 2012") and the exhibits annexed thereto; and the Declaration of Edna D. Guerrasio, July 30, 2012 ("Guerrasio Decl., July 30, 2012").

sisting customers with their purchases and working the cash register. The station manager oversees the daily operations of the station, including scheduling, payroll, training, management, purchasing and merchandising, among other things. Hess currently employs approximately 1,000 to 1,500 full time and part-time hourly employees in its gas stations in New York.

Plaintiffs allege that Hess station managers (1) regularly modified employees' timesheets in order to reduce the number of hours worked to below forty per week, depriving employees of any pay for overtime and (2) routinely required cashiers to work "off-the-clock" before and after their scheduled shifts, without recording the time they worked and therefore denying them compensation. In this motion, Plaintiffs propose a putative class consisting of all hourly employees (or cashiers) of Hess gas stations in New York State, employed at any time in the three years before the commencement of this action (between January 12, 2009 and January 12, 2012).

In their complaint, Plaintiffs also allege that cashiers frequently worked a "spread of hours" of more than ten hours in a single day, but that they were never compensated for "spread of hours" pay, as required by the NYLL. Plaintiffs include this claim within their general allegation that they seek relief for "similarly situated" workers. Defendants assert that the class claim regarding "spread of hours" pay must be dismissed, or that certification with respect to the claim should be denied. However, Plaintiffs have not yet moved to certify the class claims under the NYLL, including any "spread of hours" claims.

All of the Hess gas stations in New York use the same electronic timekeeping system for payroll purposes, Web Pay/NDC. In order to keep track of hours worked, employees log into a computer at the Hess station to "clock-in" and "clock-out" at the beginning and end of their shifts. Station managers are responsible for reviewing and finalizing the timesheets each week, and then sending them along to Hess's corporate offices for payment processing. The managers, and only the managers, have the authority to change employees' time entries, and the system does not require them to provide any reason or additional information in order to do so. They may modify the time entries by changing the clock-in and clock-out times that were originally entered by the employees.

Hess claims that the only reason a manager would modify a time entry would be to provide a clock-in or clock-out time where the employee has forgotten to do so; Plaintiffs dispute this. If any modifications have been made, only the modified versions of the timesheets are forwarded along for payroll. RSMs conduct "spot checks" of each station's timesheets each month.

The timekeeping system maintains at least three sets of records: (1) a summary of total hours worked by each employee in a given workweek at a particular station ("Station Summary"), (2) a set of time records that show the original clock-in and clock-out times entered by the employees, prior to any modifications ("Unmodified Timesheets"), and (3) a set of time records that reflect any modifications made by the manager, which are the records later sent to payment processing ("Modified Timesheets"). The timekeeping system automatically indicates where a time entry has been modified with an "M" placed next to the particular clock-in and clock-out times.

In support of their claims, Plaintiffs have submitted evidence in connection with two Hess gas stations in the state— the station located at 39–02 Queens Boulevard, Queens, New York 11104 (the "Queens Station"), where Plaintiffs

worked, and a Hess station located at 766 Southern Boulevard, Bronx, New York (the "Bronx Station"). This evidence includes Station Summaries, Unmodified Timesheets, and Modified Timesheets produced by the Defendants for hourly employees of both stations.[3] Plaintiffs contend that a more widespread policy of doctoring timesheets exists. These claims are summarized below.

## A. The Queens Station

Plaintiffs have all worked at the Queens Station as cashiers. Hamadou worked there from October of 2010 through June 15, 2012. Shahjahan has worked there from October of 2000 through the present. Asiedu has worked there from May of 2011 through the present.

As station manager of the Queens Station since July 14, 2008, Defendant Gueye supervised Plaintiffs and was responsible for submitting their timesheets for payroll processing.

From January 1, 2009 through September 1, 2011, Defendant Ball acted as the RSM for the territory including the Queens Station (Territory 10 in Region 2), which included twelve other Hess stations. Afterward, Defendant Tous replaced him as the RSM for that territory.

Each of the plaintiffs has submitted a declaration alleging that Defendant Gueye regularly changed the clock-in and clock-out times on their timesheets before sending them to payroll, reducing the total number of hours they worked—whether they worked more or less than forty in a week (although they often worked more). As a result, they were never paid for the additional hours they worked, and never received any compensation, let alone overtime compensation, for hours worked over forty. Several timesheets they have submitted corroborate these assertions. For example, an Unmodified Timesheet for Plaintiff Shahjahan shows that he worked approximately 51 hours in a particular week, although his earnings statement shows that he was only paid for 40 hours, and that he was not paid at all for the overtime hours he worked.

Plaintiffs also claim that they were frequently required to work "off-the-clock" before and after their shifts, for which they were never paid. Plaintiff Hamadou explained that some of his off-the-clock duties included cleaning the gas pumps, taking inventory, and moving merchandise.

The declarations also state that Plaintiffs regularly worked a "spread of hours" greater than 10 hours in a single workday, but were not paid any "spread of hours" payments, as required by the NYLL. ("Spread of hours" is defined under New York law as the interval between the beginning and end of the employee's workday, including any time off duty. *See* 12 N.Y.C.R.R. § 142–2.18.) Plaintiffs identify another former employee at the Queens Station, "Bedi Kuldip," as someone who was subjected to the same practices, based on their conversations with him.

---

**3.** Some of the Unmodified Timesheets produced by Defendants are "recreations" rather than originals. Plaintiffs also assert that some of the Station Summaries are "recreations." Defendants admit that the original Unmodified Timesheets are unavailable because Hess only keeps those records for three months. The FLSA, however, requires employers to retain time records for two years. *See* 29 C.F.R. Part 516. Where time records are not kept and preserved as required by law, like in this case, courts draw inferences from the lack of evidence against the employer. *See, e.g., Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 331–32 (S.D.N.Y.2005). In this case, it makes no difference to the outcome of the motion. Plaintiffs have successfully used the "recreations" to support their claims related to the Queens and Bronx stations.

According to Plaintiffs, they complained to Gueye about these practices. He allegedly told them that it was Hess company policy to reduce the number of hours they worked in the timekeeping system, and that he was instructed and pressured to do so by his supervisors, the RSMs. He also told them that RSMs are given certain incentives by Hess to reduce the number of employees' recorded hours.

After they complained, Plaintiffs claim that they experienced retaliation—their scheduled working hours were reduced to approximately twenty hours per week, down from over forty. They also assert that Defendant Gueye threatened to fire them.

Hess admits that Gueye changed the timesheets of employees at the Queens Station to keep the number of hours they worked to below forty per week. The company identifies Gueye as a "rogue employee" and contends that Gueye did this on his own initiative. Hess insists that this activity was limited to the Queens Station only, under Gueye's management. The company maintains that its corporate policy is to record and pay employees for all hours worked accurately, consistent with obligations under state and federal wage and hour laws.

Hess obtained a declaration from Gueye in which he states that he did indeed change timesheets, but explaining that he did not realize the practice was contrary to Hess policy. Gueye claims that he only engaged in this practice as a way to stay within the Hess labor cost guidelines for the station. He also claims that he continued to keep track of the hours that individual employees worked above forty in a week, with the assistance of the employees themselves, in order to "tack on" the additional hours to weeks where employees worked less than forty hours. Plaintiffs deny that they tracked their hours with Gueye or received "make-up" pay in weeks they worked less than forty hours.

According to Hess, Defendant Tous (RSM and Gueye's supervisor), discovered Gueye's timekeeping practices in September of 2011, when he took over for Defendant Ball, and immediately put a stop to them. In his declaration, Defendant Tous claims he further investigated the pay practices of the other twelve stations in his territory, and did not find any activities contrary to Hess's policy. Plaintiffs claim that the practices did not stop until they filed their complaint in January of 2012, but they offer no evidence indicating that any timesheets were doctored at any station in Tous' territory other than the Queens Station.

## B. The Bronx Station

Plaintiff Hamadou also identifies two employees of the Bronx Station—Piyerigou Coulibaly (a.k.a. Abdoul Karim) and Peter Owusu who he claims have been subjected to the same allegedly unlawful timekeeping policies at that station. According to Hamadou, he met with Mr. Coulibaly on several occasions. Mr. Coulibaly told him that his manager at the Bronx Station, Ange Ta, regularly reduced his recorded hours in the timekeeping system, and that he was not paid for all the hours he worked. In one instance, Mr. Coulibaly worked for approximately 24 consecutive hours because Ms. Ta failed to show up for her shift, but he was only paid for eight of those hours. Mr. Coulibaly did not join the suit, as Hamadou explains, because he did not want to damage his relationship with Ms. Ta.

Similarly, Hamadou relays conversations he had with Mr. Owusu, a current employee, wherein Mr. Owusu told him that Ms. Ta regularly "cut" his hours in the timekeeping system and would show up late or miss her shifts, requiring him to work

extra hours for which he was never paid. According to Hamadou, Mr. Owusu did not want to join the suit because he feared he would be retaliated against.

Plaintiffs' contentions are contradicted by declarations submitted by Mr. Coulibaly and Mr. Owusu, in which the employees attest that they have no knowledge of the practices of which Plaintiffs complain, or of any employee who was not properly paid at Hess. A third declaration is provided by Youssouf Diomande, another Bronx Station employee, who attests to the same. At her deposition, Ms. Ta claimed that the only reason she modified time entries was to enter a clock-in or clock-out time where an employee had forgotten to do so.

In the declaration that he signed prior to his deposition, Mr. Owusu stated, "I have been advised that I have the right to not talk to the lawyers for Hess Corporation ("Hess") and that there will be no retaliation against me if I refuse to do so." (Decl. of Peter Owusu, May 30, 2012 ("Owusu Decl.") ¶ 2.) He also stated, "I understand that I may be eligible to become a participant in this litigation if a class is certified." (Owusu Decl. ¶ 4.)

But at his deposition, Mr. Owusu made statements that contradicted his written statement. He testified that he was not told by anyone that he might be eligible to become a plaintiff in the action, and that he was not advised that he could not be retaliated against if he refused to speak to the lawyers for Hess. He also said that he believed Hess's attorney "is my attorney, so once he's my attorney, I know he's there for everything on my behalf." (Dep. of Peter Owusu, June 25, 2012, 16:13–17.) Defendants point to other testimony where Mr. Owusu said he was properly paid for all the time he worked at Hess.

Plaintiffs offer as evidence timesheets and "recreations" of timesheets of Bronx Station employees, which they claim show that, in 2009 and 2010, 73% of employees' time entries were "modified," or reduced, at the Bronx Station. Likewise, in 2011, 73% of Mr. Owusu's time entries were reduced, as were 100% of Mr. Coulibaly's time entries. They also note that a "vast majority" of the modified times entered by Ms. Ta were exactly on the hour (e.g., 8:00 a.m.), suggesting that employees may not have been paid for off-the-clock work. Adam Wolbarst, the RSM for the territory including the Bronx Station, testified that "if the manual overrides are dead on the hour, that would raise suspicion" because it is normal for employees to clock-in and out before and after their scheduled shifts.

Plaintiffs assert that their review of the recreations demonstrates that "Employees were denied at least 100 hours pay annually."

## C. Evidence of a Widespread Practice

Plaintiffs point out that, prior to serving as station manager of the Bronx Station, Ms. Ta managed several other Hess stations, including two stations in the Bronx (one on 223rd Street and Nereid Avenue, and one on Crotona Avenue), one in Tarrytown, and one on Bruckner Boulevard. They argue that she likely altered timesheets and required employees to work off-the-clock at those locations as well. No individual who worked at these stations has come forward as a plaintiff. Plaintiffs offer no evidence analogous to the evidence from Ta's current station—at this stage, Plaintiffs' document discovery has been limited to time records for employees at the Queens and Bronx stations. Plaintiffs argue that because Ms. Ta was never disciplined for changing timesheets, the practice may have been widespread at Hess. They rely on the testimony of Mr. Wolbarst to the effect that consistent or extensive modification of time entries would raise suspicions at his level either

that (1) the manager was not observing Hess's policy of clocking in and out or (2) that Hess might not be paying employees for all the time they worked. Wolbarst testified that as RSM, he conducted monthly "spot checks" for timesheets of each gas station in his territory. But it appears that he failed to detect Ms. Ta's practices.

Plaintiffs make a similar argument regarding the territory including the Queens Station. They argue that Defendants Ball and Tous, the RSMs for the territory, did not put a stop to Gueye's practices until January of 2011.

Plaintiffs further argue that managers and RSMs have an incentive to "cut" employees' hours in the recording system because their performance is evaluated based on the profitability of the gas stations, which is affected by the labor cost and the number of hours employees worked. Defendant Gueye allegedly told Plaintiffs that Hess had a company-wide policy of denying overtime compensation and giving RSMs incentives for doing so.

In response to Plaintiffs' arguments that these practices are "territory"-wide or statewide, Hess has submitted declarations from all of its RSMs in the state—a total of twenty-one (including Defendant Tous)—as well as two Hess executives, in which the employees attest that all time worked is accurately recorded and paid, in accordance with Hess policy. The affiants did not review the timesheets before so testifying, but rely on their personal knowledge and experience. Plaintiffs have had the opportunity to depose all of Defendants' affiants; as noted above, they deposed Mr. Wolbarst. They have also conducted depositions of Ms. Ta and Mr. Owusu.

Hess also claims that time records from January 1, 2006 through March 30, 2012 reveal that nearly 65 percent of all time entries for fulltime Sales Associates in Territory 10 contained "some form" of overtime hours; the Queens Station itself was excluded from the analysis. (Guerrasio Decl., Apr. 20, 2012, at ¶ 9.) It claims further that two-week snapshots of wage records from each of the 243 stations, selected at random, show that overtime hours have been "consistently charged" and cashiers have "consistently clocked-in and clocked-out" both prior to and after their scheduled shifts. (*Id.* ¶ 14.) To support these statements, Hess has only submitted a declaration by Defendants' counsel, Ms. Guerrasio. Defendants have not submitted any time records or hard evidence from the "snapshots" to buttress counsel's claims.

## DISCUSSION

### A. Certification of a Collective Action Pursuant to the FLSA

#### 1. Introduction

The FLSA requires employers to pay their employees overtime wages—calculated at a rate of "one and one-half times the regular rate"—for each hour worked in excess of 40 hours per week, 29 U.S.C. § 207(a)(1). To enable employees to enforce their rights under the FLSA, section 216(b) creates a private right of action to recover unpaid overtime compensation, and provides that employees may pursue their claims collectively:

> An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C § 216(b). The collective action procedure was designed to promote the "efficient adjudication of similar claims," so that "similarly situated" employees may pool resources to prosecute their claims. *Lynch v. U.S. Auto. Assoc.*, 491 F.Supp.2d 357, 367 (S.D.N.Y.2007) (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). Unlike Federal Rule of Civil Procedure 23, however, the FLSA only authorizes opt-in collective actions. *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 626 (E.D.Cal.2009).

There are three essential features in a FLSA collective action under section 216(b):

> First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. Second, the statute of limitations runs on each employee's claim until his individual Consent Form is filed with the court. Third, to better serve the FLSA's "broad remedial purpose," courts may order notice to other potential similarly situated employees to inform them of the opportunity to opt-in in the case.

*Lynch*, 491 F.Supp.2d at 367 (citing *Hoffmann–La Roche*, 493 U.S. at 173, 110 S.Ct. 482).

Though section 216(b) neither explicitly provides for court-authorized notice nor requires it, it is " 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 103–04 (S.D.N.Y.2003) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y.1997)); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n. 10 (2d Cir.2010) ("Thus certification is neither necessary nor sufficient for the existence of a representative action under FLSA, but maybe useful as a case management tool for district courts to employee in appropriate cases") (quoting *Hoffmann–La Roche*, 493 U.S. at 169, 174, 110 S.Ct. 482). Orders that authorize notice to be sent are commonly referred to as orders "certifying" that a case be litigated as a collective action. *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819(GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) (Lynch, J.).

### 2. Overview of the FLSA's Two–Stage Certification Process

■ Courts in the Second Circuit employ a two-stage process to determine whether such certification is proper. *See, e.g., Raniere v. Citigroup Inc.*, 827 F.Supp.2d 294, 318–319 (S.D.N.Y.2011); *Lynch*, 491 F.Supp.2d at 367–68; *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F.Supp.2d 317, 327 (S.D.N.Y.2010) ("The dominant approach among district courts in this Circuit is to conduct a two-phase inquiry in determining whether potential opt-in plaintiffs are 'similarly situated.' "); *Myers*, 624 F.3d at 554 (approving of the two-step method in dicta). In the first stage, the Court makes a preliminary determination about whether the named plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to authorize the sending of notice and allow the case "to proceed as a collective action through discovery." *Lynch*, 491 F.Supp.2d at 368. If the court finds that the named plaintiffs and potential opt-ins are indeed "similarly situated," the court "conditionally certifies" the collective action. *Id.* (citing *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y.2007)). The plaintiffs then send court-approved notice to potential members, who may elect to opt-in to the collective action by filing consent forms with the court, and the now-collective action proceeds to discovery. *Id.* Because the clock is running on the claims

of potential opt-in plaintiffs all the while, conditional certification is to be decided early in the litigation process, so that class members' claims do not become time-barred.

■ At the second stage—after discovery and upon the defendant's request—district courts must undergo a more stringent factual analysis to determine whether the collective action members are in fact similarly situated. *Espinoza v. 953 Associates LLC,* 280 F.R.D. 113, 123 (S.D.N.Y. 2011). The court may decertify the action if the record reveals that the employees are not similarly situated; the claims of those who have opted in are then dismissed without prejudice to the filing of individual suits. *Raniere,* 827 F.Supp.2d at 320.

■ Because this is a motion for conditional certification, the Court need only make a preliminary determination whether the Plaintiffs and other unnamed Hess employees are "similarly situated."

### 3. The Stage One Standard for Conditional Class Certification

■ Neither the FLSA nor its implementing regulations defines "similarly situated." *Hoffmann,* 982 F.Supp. at 261. However, courts in this Circuit require that plaintiffs only make a " 'modest factual showing' that [plaintiffs] and other putative collective action members 'were victims of a common policy or plan that violated the law.' " *Indergit v. Rite Aid Corp.,* No. 08 Civ. 9361(PGG), 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (quoting *Amendola v. Bristol–Myers Squibb Co.,* 558 F.Supp.2d 459, 467 (S.D.N.Y.2008)); *Raniere,* 827 F.Supp.2d at 319 ("At this initial step, Plaintiffs need only provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.' ") (quoting *Morales v. Plantworks, Inc.,* No. 05 Civ. 2349(DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006)); *Hoffmann,* 982 F.Supp. at 261.

■ To meet this standard, plaintiffs must proffer " 'substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." *Davis v. Abercrombie & Fitch Co.,* No. 08 Civ. 1859(PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 22, 2008) (citing *Ayers v. SGS Control Servs., Inc.,* No. 03 Civ. 9078(RMB), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)); *Indergit,* 2010 WL 2465488, at *3. Plaintiffs can meet this burden by "relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Raniere,* 827 F.Supp.2d at 319 (quoting *Hallissey v. Am. Online, Inc.,* No. 99 Civ. 3785(KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008)); *Kress,* 263 F.R.D. at 629. Evidence outside the scope of the complaint is properly considered for this purpose, but if defendants admit that the actions challenged by plaintiffs reflect a company-wide policy, it may be appropriate to find plaintiffs similarly situated based solely on plaintiffs' substantial allegations, without the need for additional evidence. *Damassia,* 2006 WL 2853971, at *3.

■ "Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are 'similarly situated' is very low." *Raniere,* 827 F.Supp.2d at 319 (citing *Lynch,* 491 F.Supp.2d at 368). Other courts describe it as "minimal." *See Damassia,* 2006 WL 2853971, at *3. This low burden is consistent with the "broad remedial purpose of the FLSA." *Raniere,* 827 F.Supp.2d at 319 (quoting *Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 336 (S.D.N.Y.2010)); *Hoffmann–La Roche,* 493 U.S. at 173, 110 S.Ct.

482 (1989); *Hoffmann,* 982 F.Supp. at 262 (citing cases discussing the broad remedial purpose of the FLSA).

■ In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims. *Lynch,* 491 F.Supp.2d at 368; *Shajan v. Barolo, Ltd.,* No. 10 Civ. 1385(CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits is absolutely inappropriate."). The court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." *Lynch,* 491 F.Supp.2d at 368–69; *Hoffmann,* 982 F.Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"). District courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann–La Roche,* 493 U.S. at 174, 110 S.Ct. 482.

■ Significantly, Federal Rule of Civil Procedure 23's requirements for class certification do not apply to the certification of a collective action under the FLSA. *Espinoza,* 280 F.R.D. at 121; *Vogel v. Am. Kiosk Mgmt.,* 371 F.Supp.2d 122, 127 (D.Conn.2005) ("The prevailing view in the Second Circuit, and in other Circuits, is that actions ... pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles."); *La Belle Farm,* 239 F.R.D. at 368. As a result, the "similarly situated" standard is "considerably more liberal than class certification under Rule 23." *La Belle Farm,* 239 F.R.D. at 368.

### B. Plaintiffs Have Met the Stage One "Similarly Situated" Standard for the Stations in the Queens and Bronx Territories

In this action, Hess seeks conditional certification of a class consisting of all hourly employees at all 243 Hess gas stations in the State of New York. Hess argues that Plaintiffs' allegations only relate to "one" Hess location, "one" station manager, and "two" RSMs, and therefore Plaintiffs fail to demonstrate that they are similarly situated to other employees in the state.

I agree that the evidence submitted is insufficient to warrant conditional certification statewide. Nevertheless, as outlined below, Plaintiffs have made an adequate factual showing to warrant certification of the two Hess "territories" that encompass the Queens and Bronx stations, each of which includes between 10–13 stations.

■ In this Circuit, courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice. *Rosario v. Valentine Ave. Disc. Store, Co., Inc.,* 828 F.Supp.2d 508, 516–17 (E.D.N.Y.2011) (collecting cases). In the context of statewide certification under the FLSA, some courts have described this as a requirement to demonstrate that a "statewide" policy or practice exists. *See Vasquez v. Vitamin Shoppe Indus. Inc.,* No. 10 Civ. 8820(LTS)(THK), 2011 WL 2693712 at *3–4 (S.D.N.Y. July 11, 2011); *Guillen v. Marshalls of MA, Inc.,* 750 F.Supp.2d 469, 476–80 (S.D.N.Y. 2010) (nationwide class requires showing that plaintiffs across the nation are similarly situated). With respect to both statewide certification and certification across a smaller territory, courts consider whether the plaintiffs have made an adequate factual showing to support an inference that such a uniform policy or practice exists, and whether the locations share common ownership or management. *See,*

e.g., *Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285(DAB), 2011 WL 4001072, at *3 (S.D.N.Y. Aug. 25, 2011); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F.Supp.2d 89, 93–94 (E.D.N.Y.2010).

For example, in *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595(RJH), 2011 WL 1770827 (S.D.N.Y. May 9, 2011), the court found that employees at a total of eight restaurants were similarly situated to plaintiffs who only worked at five of the restaurants where the "facts support[ed] a reasonable inference that there was a uniform policy across the eight restaurants, all of which share a common ownership, are supervised by the same individuals, and are administered by the same company." *Capsolas*, 2011 WL 1770827 at *3. In that case, restaurant workers at several restaurants alleged that a percentage of their tips were unlawfully withheld, and that their manager told them the money was supporting a wine program for the restaurants. *Id.* Similarly, in *Rosario*, the plaintiffs made a "modest factual showing that employees at eight [retail stores] were not paid the minimum wage or properly compensated for their overtime hours" and presented "two methods of implementing" such a policy. *Rosario*, 828 F.Supp.2d at 516. On that basis, the court concluded that conditional class certification was appropriate across all twenty-seven of the stores, which were under the same ownership and management. *Id.* at 516–18.

■ In this case, Plaintiffs have certainly made a sufficient showing that, at the Queens Station, employees' hours were consistently altered in the timekeeping system (both when they worked more and less than forty hours in a week) and that they were forced to work off-the-clock. Each of the plaintiffs has submitted a declaration alleging that their manager, Defendant Gueye, regularly engaged in such practices. As a result, Plaintiffs allege, they did not receive pay for all of the hours they worked, including time-and-one-half pay for overtime hours.

Hess admits that Gueye did what Plaintiffs allege with respect to overtime hours. Gueye's declaration and the timesheets Plaintiffs have submitted corroborate at least some of their allegations—that in weeks where they worked over forty hours, Gueye "cut" their recorded hours and they were not paid for any overtime. As Plaintiffs point out, off-the-clock work by its nature would not be reflected in their timesheets.

Plaintiffs have also made substantial allegations that this practice may have existed throughout the territory, not just at the Queens Station. All three plaintiffs have attested to the fact that Defendant Gueye told them his actions were company policy, and that the RSMs for his territory insisted he alter the time records. This statement may not be enough to get Plaintiffs to *statewide* certification, but it is enough for conditional certification of a class consisting of employees who worked at all stations in the territory that encompasses the Queens Station.

On this point, Plaintiffs' argument is only strengthened by the declarations of numerous other RSMs, submitted by Hess, and the deposition testimony of Mr. Wolbarst, the RSM for the Bronx "territory," all of which indicate that RSMs are responsible for ensuring that all stations in his/her territory adhere to lawful timekeeping policies. Even under Hess's version of the events, Defendant Tous did not discover Gueye's (admittedly) unlawful activities until September of 2011, when he took over for Defendant Ball. And according to Plaintiffs, the practices continued until they filed their complaint in January of 2012.

Plaintiffs have also made substantial allegations of unlawful timekeeping practices at the Bronx Station, which is in a different territory. In his declaration, Plaintiff Hamadou identified by name two employees of the Bronx Station, Mr. Coulibaly and Mr. Owusu, who complained to him that their station manager, Ms. Ta, regularly altered their time records and forced them to work off-the-clock. Timesheets submitted by Plaintiffs reinforce these claims. In 2009 and 2010, 73% of employees' time entries at the Bronx Station were altered. In 2011, 100% of Mr. Coulibaly's time entries were altered. The evidence submitted also indicates that the time entries were not "modified" by the manager only when employees forgot to enter their time, as Ms. Ta and Hess claim. Mr. Owusu testified that he rarely forgot to enter his time, yet 73% of his time entries were altered in the year of 2011.

Plaintiffs' submissions are also sufficient to infer, at this early stage in the litigation, that a common practice may have existed among the other stations in the same territory as the Bronx Station. Mr. Wolbarst, an RSM for the territory during the relevant time period, testified that he conducted monthly "spot checks" of timesheets for each gas station in his territory. He also claimed that consistent modifications to time entries should raise suspicions at the RSM level that either the station manager was not reinforcing Hess's policy of clocking in and out, or that Hess was not paying its cashiers for all the time they worked. It would also be suspicious, according to Mr. Wolbarst, if modified time entries were frequently exactly on the hour, because it is rare that an employee would clock in or out exactly when his/her shift begins or ends. Yet it appears that he never discovered Ms. Ta's suspicious activity.

Therefore, at this early stage, employees at all stations in the territories encompassing the Bronx and Queens stations should be part of the collective action.

■ Defendants contend that the statements made to Plaintiffs by Defendant Gueye, Mr. Coulibaly, and Mr. Owusu should not be credited because they constitute "unverified hearsay" and are contradicted by the declarants' own affidavits. They are incorrect. Courts do not resolve factual disputes or make creditability determinations at the conditional certification stage. *Lynch*, 491 F.Supp.2d at 368–69. In fact, "courts in this Circuit regularly rely on [hearsay] evidence to determine the propriety of sending a collective action notice." *Moore v. Eagle Sanitation*, 276 F.R.D. 54, 59 (E.D.N.Y.2011) (internal quotation marks and citation omitted). This is to be expected, since "the initial class certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain unproven allegations." *Fasanelli v. Heartland Brewery, Inc. and Bloostein*, 516 F.Supp.2d 317, 322 (S.D.N.Y.2007).

Moreover, there is no reason in this case to credit the declarations submitted by Defendants as evidence over Plaintiffs' hearsay statements. The record contains not insignificant allegations that Mr. Coulibaly and Mr. Owusu did not understand their rights in connection with this litigation and may have felt pressured into signing written statements that are at odds with their deposition testimony. Plaintiffs assert that they experienced retaliation after complaining to Defendant Gueye, and that other employees they have spoken with fear the same. And after meeting with Hess's lawyers, Mr. Owusu was under the mistaken impression that they represented his own interests.

Defendant Gueye's own declaration similarly does not override Plaintiffs' own

statements regarding their conversations with Gueye. Courts have granted conditional certification for employees at other locations owned by a defendant based on a manager's alleged statements regarding a common unlawful policy or practice, without any further inquiry into the credibility of those statements. *See, e.g., Guzelgurgenli v. Prime Time Specials Inc.*, 883 F.Supp.2d 340, 350–51 (E.D.N.Y.2012) (collecting cases); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 787, 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002). In *LeGrand*, the court explained that "Three of the plaintiffs ... have submitted declarations in which each states that each 'was told by management that [assistant directors of admission] at defendants' schools across the country also had to work over forty hours per week, and were denied overtime.' This is sufficient evidence to satisfy plaintiffs' burden at this early stage." *LeGrand v. Education Management Corp.*, No. 03 Civ. 9798, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004). In *Capsolas*, like in this case, the court was presented with a declaration by a manager denying the plaintiff's allegations that he made a statement regarding a common illegal policy at all of the defendants' restaurants. *Capsolas*, 2011 WL 1770827, at *3–4. The court rejected defendants' argument that the manager's denial negated an inference of a common policy, writing that "the Court at this point does not weigh the evidence or speculate concerning plaintiffs' ultimate ability to succeed on the merits." *Id. But see Laroque v. Domino's Pizza, LLC*, 557 F.Supp.2d 346 (E.D.N.Y.2008) (conditionally certifying class only for a single store, rather than several stores in the Brooklyn area, where a store manager denied statements by plaintiffs that he told them defendant had a widespread policy of undercompensating hourly employees at those stores).

Defendants also attempt unsuccessfully to discredit Hamadou's statements concerning Mr. Coulibaly and Mr. Owusu, by claiming that Hamadou's allegations are "conclusory" in nature and should be stricken. In granting conditional certification, courts have relied on allegations that specifically identify other employees who have complained of the same practices as the plaintiffs; statements are deemed "conclusory" where they fail to identify particular employees or make specific allegations. *See Guzelgurgenli*, 883 F.Supp.2d at 349–50; *Harhash v. Infinity W. Shoes, Inc.*, 2011 WL 4001072, at *3–4 (granting conditional class certification in part based on plaintiffs' statements that they had spoken with or knew of other sales employees of defendants' shoe stores that complained of the same compensation policies). Indeed, in *Guzelgurgenli*, the court relied on the plaintiffs' allegations that three other delivery drivers for defendants' stores, who were identified only by first name, complained that they too were not paid for overtime hours. *Guzelgurgenli*, 883 F.Supp.2d at 349–50.

In this case, Plaintiff Hamadou's statements regarding his conversations with Mr. Coulibaly and Mr. Owusu are not merely "conclusory allegation[s]," like those in *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006), where plaintiffs baldly asserted in the complaint that "[t]here are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for Defendants." *Morales*, 2006 WL 278154, at *2–3; *see also Barfield v. N.Y.C. Health and Hospitals Corp.*, No. 05 Civ. 6319(JRS), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005). Hamadou provided a detailed account of his conversations with the other two Bronx employees.

He identified the locations where he met with Mr. Coulibaly and stated specifically that:

> Each time I spoke to Mr. Coulibaly about such time and pay matters, he told me that he suffered from the same policy and practice of defendants. Mr. Coulibaly told me that he was not paid for all hours he worked. He explained that his former manager, Ange Ta, would go into defendants' time tracking system and change his hours. He told me that she would significantly cut his hours. For instance, Mr. Coulibaly told me that he had once worked approximately 24 hours consecutively because Ms. Ta did not show up for her shift after his. He explained that he was only paid for 8 of those 24 hours after his manager cut his hours. Mr. Coulibaly explained to me that defendants' policy affected all employees at the Bronx Station.

(Decl. of Diallo Hamadou, July 14, 2012 ("Hamadou Decl."), ¶ 30.)

And with respect to Mr. Owusu he stated:

> After I explained to Mr. Owusu the illegal policy and practice that took place at my station, Mr. Owusu stated the same exact thing was happening at the Bronx Station. Mr. Owusu told me that his manager would cut his hours and often she would not show up for her shifts or would show up several hours late, requiring Mr. Owusu to work extra hours or work double shifts. Mr. Owusu told me that he was not paid for these extra hours he worked.

(*Id.* ¶ 34.)

## C. I Will Not Conditionally Certify A Statewide Class

Plaintiffs' allegations are insufficient to merit statewide certification. The only evidence of timesheet doctoring is at the Queens and Bronx stations, and the only evidence of managerial laxity is in the Queens and Bronx "territories." Plaintiffs offer no evidence—not even hearsay—about stations elsewhere in the New York City metropolitan area or further upstate.

Plaintiffs argue that because Ms. Ta and Defendant Gueye were never disciplined for frequently making such modifications, the practice must be permitted at Hess gas stations throughout the state. I can draw no such inference. Although Ms. Ta has managed five other stations in the New York City metropolitan area, including stations elsewhere in the Bronx and in Westchester, there is no evidence of any untoward activity outside the territory encompassing the Bronx Station, or further upstate. Similarly, Defendant Gueye's practices and the management's failure to supervise his activities were limited to the territory encompassing the Queens Station.

The single allegation that reaches beyond the two "territories" addressed above is Defendant Gueye's alleged statement that altering employees' time records was "company policy." Plaintiffs also assert that Hess incentivizes its managers and RSMs to alter time records because their managerial performance is evaluated in terms of the profitability of the gas stations, which depends in part upon labor costs and number of hours that cashiers work.

These allegations are too thin to warrant certification across all 243 gas stations in the state. Courts have repeatedly denied conditional certification of a statewide class (or a nationwide class) where plaintiffs have alleged that a *de facto* unlawful policy exists, but have only presented facts pertinent to several locations in a particular region. In *Vasquez,* the court declined to grant statewide certification where the plaintiff's allegations only related to the experience of store managers working at

Vitamin Shoppe stores in the New York City area. *Vasquez,* 2011 WL 2693712, at *3–4. The plaintiff claimed that all store managers largely performed duties considered "non-exempt" under the FLSA, and were therefore eligible for overtime pay. *Id.* But the company's policy of classifying all store managers as exempt was insufficient to show that the plaintiff, who made allegations with respect to New York City stores only, was "similarly situated" to store managers statewide. *Id.*

In *Eng–Hatcher v. Sprint Nextel Corp.,* No. 07 Civ. 7350(BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009), as in this case, the plaintiff asserted that retail employees at Sprint stores were forced to perform work off-the-clock and denied overtime pay as a result. *Eng–Hatcher,* 2009 WL 7311383, at *1. In support of her claim, the plaintiff submitted her own deposition concerning her experience at several stores in New York City and identified five other retail employees complaining of the same practices, who were also employed at the same stores. *Id.* at *3. The court found that this was insufficient to warrant nationwide certification across 1, 200 locations, noting that official company policies of "maximizing sales and minimizing overtime" did not indicate that a *de facto* common policy of under-compensating workers for overtime existed at Sprint locations nationwide and was implemented by individual store managers. *Id.; see also Guillen v. Marshalls of MA, Inc.,* 750 F.Supp.2d 469, 472, 480 (S.D.N.Y.2010) (denying without prejudice conditional certification of nationwide class including 820 stores where plaintiffs submitted evidence of "non-exempt" work performed by employees at five retail stores in the New York metro area).

In this case, the allegations only reach as far as the management of the territories encompassing the Queens and Bronx sta-tions. Nothing in the record suggests that similar failures in enforcing the company's official policy to accurately record employees' time exist in other territories, which are managed and supervised by different people. Defendants have submitted declarations from each of the RSMs in the state (twenty-one in total) which aver that no such problems exist in other territories. While it would be "inappropriate to rely on defendants' affidavits at an early stage of litigation, prior to the affiants' availability for deposition," in this case, Plaintiffs have had the opportunity to depose those RSMs, and they have not presented any other evidence regarding timekeeping practices in areas outside of the Queens and Bronx "territories." *See Cohen v. Gerson Lehrman Group, Inc.,* 686 F.Supp.2d 317, 329 (S.D.N.Y.2010) (citing *Francis v. A & E Stores, Inc.,* 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008)); *Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819(GEL), 2006 WL 2853971, at *7 (S.D.N.Y. Oct. 5, 2006).

There is, therefore, no basis to certify conditionally a statewide class. But "it is within the district court's power to limit the scope of the proposed class in a collective action." *Gorey v. Manheim Services Corp.,* No. 10 Civ. 1132(JSG), 2010 WL 5866258, *4 (S.D.N.Y. Nov. 10, 2010). Accordingly, the Court is conditionally certifying the class of all hourly employees working at Hess gas stations in the two Hess-designated "territories" including the Queens and Bronx stations. If evidence of a more widespread practice is adduced during discovery, we can revisit the issue of a statewide class.

**B. Notice Should Be Sent in Court–
   Approved Form**

Plaintiffs contend that their proposed notice is "timely, accurate and informative," and request that it be approved for a

six-year notice period prior to the date the complaint was filed. They also seek an order directing Defendants to produce the names and available contact information for prospective collective action members and to post the Proposed Notice at each of Hess's gas stations located in New York. Defendants have not stated any opposition to these requests.

### 1. Statute of Limitations

■ The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action. *See Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234, 240 (N.D.N.Y.2002). Defendants do not contest that three years—as opposed to two—is the appropriate time frame for the collective action certification period.

■ Plaintiffs, however, request a six-year notice period, because they have also asserted claims under the NYLL which have a six-year statute of limitations. In similar cases, courts in this jurisdiction have granted both three and six year notice periods, depending upon the facts of the particular case. Here, where Plaintiffs have not yet moved for certification of the NYLL claims, I find that a three-year notice period is appropriate. It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims. Further, while a class for the state law claims may someday be certified, it is an opt-*out*, not an opt-*in*, class, so there is no danger of claim lapse.

It would be confusing to employees who are ineligible to receive an opt-in notice which does not relate to any state law claims that may someday be certified—and which is an opt-*out*, not an opt-*in*, class, so there is no danger of claim lapse.

■ Notice would normally be provided to those employed within three years of the date of the notice. *See* 29 U.S.C. § 255(a); *Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397, 410 (S.D.N.Y.2012). "However, because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Winfield v. Citibank, N.A.*, 843 F.Supp.2d at 410 (quoting *Whitehorn*, 767 F.Supp.2d at 451) (other citations omitted). In this case, I find that it is appropriate to send notice to all hourly employees of Hess employed at any of the gas stations in the Hess "territories" including the Queens and Bronx stations, for the three years prior to the filing of the complaint.

### 2. Form of the Proposed Notice

Under the first paragraph, the words "and all their gas station locations in New York State" should be deleted and replaced by, "with respect to certain gas station locations in the New York City metropolitan area, identified in section 2 below." The conditional certification of this collective action is limited to the two territories encompassing the Queens and Bronx stations.

Under section 1, in the first paragraph, after the words "did not pay employees," the following should be inserted: "at the gas station locations identified in section 2 below." In the second paragraph of that section, the address of the "Queens, New York station" should be provided. At the end of that section, the words "and spread of hours" should be deleted. This notice is

for FLSA claims, not for "spread of hours" claims under the NYLL.

Under section 2, the words "you worked at any Hess gas station in New York State" should be replaced with the words "you worked at any of the Hess gas stations in the New York City metropolitan area that are listed below." After this sentence, a list of the gas stations in the two territories encompassing the Queens and Bronx stations should be provided, along with the addresses of those stations.

At the end of section 2, the following language should be included: "This notice is to locate persons who wish to join this case and are eligible to join this case and has no other purpose. Your right to participate in this suit may depend upon a later decision by the federal court that you and the Class Representatives are 'similarly situated.'"

Under section 4, the opt-in period for the action will be 60 days from the date of the notice.

### 3. Provision of Contact Information and Posting of Proposed Notice

I order that Hess provide Plaintiffs, within 30 days, a computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, e-mail addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security numbers. This information is required with respect to all hourly employees of Hess within three years from the filing of the complaint. Plaintiffs then have 30 days to send the notice to the putative members of the collective action.

Additionally, "Courts routinely approve requests to post notice [of conditional collective action certification] on employee bulletin boards and in other common ar-eas, even where potential [class] members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 449 (S.D.N.Y.2011). Since Hess has not opposed Plaintiffs' requests, the Proposed Notice shall also be posted at all of the Hess gas stations in the two "territories" including the Queens and Bronx stations.

### C. Defendants' Motion to Strike Class Allegations Under the NYLL is Denied

Defendants argue that Plaintiffs' class claims related to "spread of hours" pay should be dismissed, or that certification with respect to those claims should be denied. They assert that Plaintiffs cannot possibly demonstrate that their claims are typical of the claims of the class or fairly and adequately protect the interests of the class, as required under Federal Rule of Civil Procedure 23(a).

"Motions to strike are 'generally looked upon with disfavor and a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Wang v. The Hearst Corporation*, No. 12 Civ. 793(HB), 2012 WL 2864524, at *3 (S.D.N.Y. July 12, 2012). Moreover, "motions to strike are also usually denied where they raise arguments that would be considered on a motion for class certification." *Chen–Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2012 WL 205875, at *4 (S.D.N.Y. Jan. 19, 2012). In this case, Plaintiffs have not yet moved for certification of the NYLL claims. Defendants' motion to strike the NYLL class claims is premature and is denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' motion for conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing Hess to provide Plaintiffs, within 30 days, with the contact information detailed above for all potential collective action members over a time period of three years prior to the date of the complaint. Defendants' motion to strike the class allegations regarding "spread of hours" pay under the NYLL is DENIED.